Johanna Becherer and Irvin Becherer, Plaintiffs-Appellees, v. Charles Best and Inge Smith, Defendants-Appellants.

**Gen. No. 65–82.**

Fifth District.

August 10, 1966.

Johnson, Ducey & Feder, Cornelius T. Ducey, of Belleville, for defendant-appellant, Charles Best, and Roberts, Gundlach, Lee Stubbs, of East St. Louis (Carl Lee, of counsel), for defendant-appellant, Inge Smith.

Kenneth J. Juen, of Belleville, for defendant-appellee.

MORAN, J.

This is an appeal from a verdict for the plaintiffs in an action for personal injuries and loss of consortium because of the alleged negligence of defendant, Charles Best, and the alleged wilful and wanton misconduct of defendant, Inge Smith, in the operation of their automobiles.

Charles Best testified that he was driving his vehicle at an estimated 55–60 miles per hour in a southerly direction on Route 159 about three and one-half miles south of Belleville. He had driven on the road many times before; and he knew that there were farmhouses and driveways on both sides of the road. Upon driving over the crest of a ridge, he first noticed the automobile which Inge Smith was driving in a southerly direction with Johanna Becherer as a passenger. He estimated the speed of the Smith vehicle at 35–45 miles per hour. When he was about 300–400 feet north of the Becherer driveway and 200–300 feet from the Smith vehicle, he pulled into the northbound lane with the intent to pass. He testified that he then sounded his horn. Both Inge Smith and Irvin Becherer, who was lying in the trailer located on his property, testified that they did not hear the sound of a horn. When Best was 50–75 feet from the Smith vehicle, although he did not see a left turn signal or brake lights, it began to angle left, toward the Becherer

driveway, at a 45-degree angle. He immediately applied his brakes and left two skid marks, one of which was 130 feet and the other 53 feet. The right front of his vehicle struck the left rear of the Smith vehicle, causing it to drop down an embankment about 80 feet from the point of impact. Best's vehicle came to a rest about 30 feet from the impact.

Mrs. Smith testified that she had turned on her directional signal when she was 500–600 feet from the driveway, although she admitted that she had stated in a deposition that she turned on the signal when she was 50–100 feet from the driveway. She also testified that she had slowed her vehicle to about 15 miles per hour in order to make the turn into the Becherer driveway. She also stated that at the time she turned on the blinker light, she did not observe headlights to her rear. When she slowed down to make the left turn, she saw the headlights from the rear. She had already started to turn when she saw the lights in the rearview mirror, but she did not observe the headlights moving from the southbound lane to the northbound lane. In fact, when she first saw the headlights, she didn't know what lane of traffic they were in.

There was also testimony by the tow truck driver that he took the Smith vehicle to his garage on the night of the accident and locked it in the garage. The next morning he checked the turn signals, and the left turn signal was on. When he reconnected the battery, the bulb flashed for a left turn.

As a result of the collision, Mrs. Becherer suffered severe injuries. Dr. Nash, a neurosurgeon who first examined and treated her on the evening of the collision, testified that she had sustained brain damage of a generalized nature. He found deficits of intellectual powers, as well as behavior, which he believed to be permanent. He stated that the injuries sustained could probably be manifested in a showing of a lack of interest in house-

178

work, children, and husband. He also testified that, with proper care, she could live out her normal life expectancy, estimated to be 35.78 years. Mr. Becherer, Mrs. Smith, Maria Link, a friend of Mrs. Becherer, and Marcella Stauder, the sister of Irvin Becherer, testified that Mrs. Becherer had changed very much after the collision. Before the collision she was a very active person, who had great patience with her children, who did a lot of washing, ironing, cooking, canning, and cleaning, and who was always neat and clean. Now, after the collision, she limped and was very sluggish, she tired very easily, she had no patience with the children and often scolded and hollered at them, and she did not care how she looked, and would not take care of the house.

Dr. Bergmann, a psychiatrist, and consultant at Alton State Hospital, testified that he first examined Mrs. Becherer a year after the accident at the request of the resident physician. He stated that the injury is of a permanent nature and that she will probably require either custodial care or would need to remain in a very protected environment for the rest of her life. In his capacity he advised treatment. He relied partially upon a history obtained by the resident physician. He next examined her three years later at the request of her attorney. He admitted that his examination was for the purpose of possibly testifying; and he added that he had obtained background information from people other than Mrs. Becherer and that he had based part of his testimony on her subjective statements of pain and symptoms.

In their complaint, the plaintiffs alleged that defendant Best was guilty of negligence in that he operated his vehicle at an excessive speed under the prevailing conditions; he failed to keep a proper lookout; he followed a preceding car more closely than was reasonable and prudent; he failed to give a signal with his horn; he failed to stop his vehicle; and he drove his vehicle in such a fashion as to cause a collision. They also alleged that

179

defendant Smith was guilty of wilful and wanton misconduct in that she turned her vehicle from a direct course upon the highway when such movement could not have been made with safety; she failed to give a signal of her intention to turn left; and she decreased the speed of her vehicle.

The jury returned a verdict in favor of Mrs. Becherer for $50,000 for her injuries and in favor of Mr. Becherer for $10,000 for loss of consortium, and they answered yes to a special interrogatory which asked whether the defendant Smith was guilty of wilful and wanton misconduct which proximately contributed to cause the occurrence in question. Both defendants filed post-trial motions for judgment notwithstanding the verdict or, in the alternative, for a new trial. From the denial of these motions, both defendants appealed.

██ ██ Best first argues that the verdict of the jury was the result of passion and prejudice induced by the absence of Mrs. Becherer during most of the trial, by prejudicial argument to the jury, and by the conduct and testimony of witnesses while testifying. No objection whatever was made at any time during the trial to the absence of Mrs. Becherer. Hence this objection was waived. Marshall v. John Grosse Clothing Co., 184 Ill 421, 56 NE 807; Forest Preserve Dist. of Cook County v. Lehmann Estate, Inc., 388 Ill 416, 58 NE2d 538. Similarly, there were no allegations of error in the post-trial motion concerning prejudicial argument or the conduct of witnesses. Hence these objections were also waived. County Board of School Trustees of Macon County v. Batchelder, 7 Ill2d 178, 130 NE2d 175; Illinois Cent. R. Co. v. Johnson, 191 Ill 594, 61 NE 334; Perez v. Baltimore & Ohio R. Co., 24 Ill App2d 204, 164 NE2d 209.

Both defendants argue that the court erred in refusing to strike the testimony of Dr. Bergmann. It is argued

that he was an examining physician only and therefore he could not testify concerning the subjective complaints made by Mrs. Becherer at the examination requested by her attorney.

In Quirk v. Schramm, 333 Ill App 293, 77 NE2d 417, the evidence showed that a physician had treated the plaintiff for four or five weeks commencing on the evening of the occurrence and that a year and seven months had elapsed from the last time he had treated her to the time when he examined her for the purpose of testifying. The court found him an attending physician.

In Powers v. Browning, 2 Ill App2d 479, 119 NE2d 795, the evidence showed that a physician had given the plaintiff a neurological examination in October, 1951, five months after an accident in which he was injured. He again saw the patient in November, 1951, and conducted another examination, resulting in the same findings as before. The physician again examined the plaintiff on November 14, 1952, finding some improvement. The complaint in that case had been filed on February 16, 1952, and the trial began on November 20, 1952. The court found him a treating physician.

██ ██ Since Dr. Bergmann had examined Mrs. Becherer for treatment, he was a treating physician and his testimony concerning her subjective symptoms was admissible. However, even if he were considered only an examining physician and his testimony inadmissible, the error would not have been reversible. The admission of incompetent testimony by a physician in a personal injury case does not justify a reversal where his testimony is merely corroborative of matters already proven by other evidence. Greinke v. Chicago City Ry. Co., 234 Ill 564, 85 NE 327. In the case at bar, everything to which Dr. Bergmann testified was corroborative and cumulative of the testimony of Dr. Nash, Anne Faist, a nurse as-

181

signed to care for Mrs. Becherer, Mr. Becherer, Marcella Stauder, Maria Link, and Inge Smith. Therefore, if error had been committed, it would have been harmless.

Defendants also argue that the testimony of Dr. Bergmann should not have been admitted because he based his conclusions and diagnosis upon information given to him by persons other than the plaintiff. During his first examination, he relied upon a history taken by the resident physician. In the second examination, he made use of information obtained from Mr. Becherer and from others.

A physician, especially a psychiatrist, must rely on information obtained both from the patient herself and from outside sources. The court in Smith v. Broscheid, 46 Ill App2d 117, 196 NE2d 380, recognized this fact when it quoted a pertinent passage from Alexander v. Covel Mfg. Co., 336 Mich 140, 57 NW2d 324, that "(n)o person is born with a knowledge of medicine and a doctor's conclusions must of necessity in many instances be based upon information acquired from sources outside of himself." In so quoting, the court refused to find that the testimony was hearsay. Wigmore, in his treatise on evidence, agrees with this position. III Wigmore on Evidence, § 688 (3rd ed 1940). In Welter v. Bowman Dairy Co., 318 Ill App 305, 47 NE2d 739, at 364, the court held that:

> The statements made by the mother to the attending physicians relating to the symptoms and sufferings of the child are admissible. The physicians were also permitted to state what the mother told them about the preparation of the formula and giving the formula to the child. The infant could not tell the physicians what had happened and (they) had to rely on information from the mother in order to diagnose the case. The conclusions stated by the mother would be hearsay. We are of the opinion that the

182

court did not err in permitting the physicians to testify as they did.

██ ██ From an analysis of these cases, we conclude that it was not error for the court to admit the testimony of Dr. Bergmann, even though it was based in part upon information obtained from persons other than the plaintiff. However, for the same reasons stated earlier, even if the testimony were inadmissible and error had been committed, the error would have been harmless.

The defendant Best next argues that the court erred in giving plaintiff's Instruction No. 13, which provided that:

> There was in force in the State of Illinois at the time of the occurrence in question a certain statute which provided that:
>
>> Every motor vehicle when operated on a highway shall be equipped with a horn in good working order and capable of emitting sound audible under normal conditions from a distance of not less than 200 feet. The driver of a motor vehicle shall when reasonably necessary to ensure safe operation give audible warning with his horn.
>
> If you decide that a party violated the statute on the occasion in question, you may consider that fact together with all the other facts and circumstances in evidence in determining whether or not a party was negligent before and at the time of the occurrence.

He argues that the instruction was not pertinent to the issues because there was only negative testimony that his horn was not sounded and because no issue of fact was thereby created. Defendant Best had testified that he sounded his horn when he pulled into the northbound lane

183

to pass. Defendant Smith testified that she heard no horn sound. Mr. Becherer testified that he was resting in the trailer on his property and that he heard no horn sound, but that he did hear brakes squealing.

Where an instruction is given in the language of a statute, and it is pertinent to the issues presented to the jury, it should be regarded as sufficient. Deming v. City of Chicago, 321 Ill 341, 151 NE 886. In Bolek v. West Shore Transp. Co., 55 Ill App2d 237, 204 NE2d 811, the court found that an issue of fact was presented concerning whether the driver had failed to sound a reasonable warning with a horn. "This was a proper question for the jury, because the witness, Emil Byke, testified he heard no horn, although he did hear the gears shift." The court based its finding on negative testimony.

In Berg v. New York Cent. R. Co., 391 Ill 52, 62 NE2d 676, our Supreme Court held that "the statement in the Morgan case, insofar as it appears to hold that negative testimony may never, under any circumstances, raise a conflict with positive testimony, is not adhered to." Id. at 61, 62. The court explained its position at 60, 61 when it stated that:

> It is well settled that negative evidence is admissible where the attending circumstances are such as to show that it has some probative force. . . . To give it probative force, it must appear that the witness was in such proximity that he could have heard the sound had it been given, and that his attitude of attention was such that if the bell or whistle had sounded it would have attracted his attention. . . . We conclude that the negative evidence of plaintiff's witnessses as to the sounding of the bell or the blowing of the whistle raised an issue of fact with positive testimony of defendant's witness on the same subject.

184

In that case, three witnesses other than the plaintiff testified that they were near enough to the tracks that they heard the rumble of the train, and they testified to facts indicating an alertness for the sound of the bell or whistle.

In the present case, Mr. Becherer testified that he had been waiting for his wife to return, that the children were in bed, that the television and radio were off, that the bed upon which he was resting was right under the window with the head end toward the window, that the trailer was 100 feet from the edge of the highway, that the windows in the trailer were open, and that the traffic was very light. From these facts and from his failure to hear a horn, in addition to the testimony of Mrs. Smith, an issue was raised concerning whether the defendant Best had sounded his horn. Hence, the instruction was pertinent and proper.

The defendant Smith next argues that the court erred in giving plaintiff's Instruction No. 15, which provided that:

> There was in force in the State of Illinois at the time of the occurrence in question a certain statute which provided that:
>
> > No person shall turn a vehicle from a direct course upon a highway unless and until such movement can be made with reasonable safety and then only after giving an appropriate signal of intention to turn right or left during not less than the last 100 feet traveled by the vehicle before turning.
> >
> > No person shall stop or suddenly decrease the speed of a vehicle without first giving an appropriate signal in the manner provided herein to the driver of any vehicle immediately to the rear when there is opportunity to give such signal.

185

> Any stop or turn signal when required herein shall be given either by means of the hand and arm or by a signal lamp or lamps or mechanical signal device.
>
> If you decide that a party violated the statute on the occasion in question, then you may consider that fact together with all the other facts and circumstances in evidence in determining whether or not a party failed to exercise that degree of care required of him before and at the time of the occurrence.

She argues that the instruction was not appropriate because there was no evidence of a sudden stop, because there was only negative evidence that no turn signal was used, and because the instruction did not set out the degree of care required.

Quite to the contrary, there was evidence from which a jury could find that defendant Smith did decrease her speed suddenly under the conditions then existing. Depending upon what the jury believed to be the distance at which the defendant Smith decreased the speed of her automobile, it could have determined that the decrease was sudden.

■ Even though there is only negative testimony concerning the failure of the defendant Smith to give a turn signal, according to the rules in the cases cited earlier, a factual question was presented concerning the giving of a turn signal. Defendant Best testified that he pulled into the passing lane and that he observed neither brake lights indicating a decrease in speed nor a signal indicating a left turn. His testimony implied that he was alert, since he estimated the speeds of his and defendant Smith's vehicles, as well as the distance between them. But, even if his testimony were not sufficient to raise a question of fact concerning the turn signal, the instruction would still be proper because the instruction also

refers to proper signals when a vehicle is stopped or slowed suddenly.

 Both defendants next argue that the court erred in giving plaintiffs' Instruction No. 29, which provided that:

> There was in force in the State of Illinois at the time of the occurrence in question a certain statute which provided that:
>
>> No person shall drive any vehicle upon any public highway of this State at a speed which is greater than is reasonable and proper with regards to the traffic conditions and the use of the highway, or endangers the safety of any person, or at a speed which is greater than 65 miles per hour, the applicable maximum speed limit. The fact that the speed of a vehicle does not exceed the applicable maximum speed limit does not relieve the driver from the duty to decrease speed when special hazard exists with respect to other traffic and speed would be decreased to avoid colliding with any vehicle on the highway in compliance with legal requirements and the duty of all persons to use due care.
>
> If you decide that a party violated the statute on the occasion in question, then you may consider that fact together with all the other facts and circumstances in evidence in determining whether or not a party failed to exercise that degree of care required of him before and at the time of the occurrence.

However, defendant Smith failed to make any objection at the instruction conference and any error now alleged by her has been waived.

Defendant Best argues that the instruction was not appropriate because there was no evidence that any

hazard existed and because it allowed the jury to specu-
late since there was no explanation of "in compliance
with legal requirements." Concerning his first argument,
a jury could have determined that a hazard existed from
the evidence that he was traveling at 55–60 miles per
hour, that defendant Smith was traveling at 35–40 miles
per hour, that he attempted to pass, and that the Smith
vehicle slowed to 15 miles per hour.

 This instruction has been approved recently. In
Wrighthouse v. Brown, 52 Ill App2d 191, 201 NE2d 752,
the court held that the failure to give the instruction
would have been error. In Berg v. Collier, 60 Ill App2d
145, 208 NE2d 353, this court held that "(i)n view of the
evidence of the speed of the vehicles, and evidence of the
distances traveled by both vehicles immediately before
the collision, in an area where the view was unobstructed,
we fail to see how the speed of plaintiff's vehicle could be
immaterial." The jury was not permitted to speculate
concerning the legal requirements since there was evi-
dence that the speed limit on the road was 65 miles per
hour. The giving of the instruction was not error.

Defendant Smith next argues that the court erred in
refusing to direct a verdict for her because the only evi-
dence which would support a finding of wilful and wanton
misconduct was the negative evidence that she did not
give a turn signal; and such evidence was not sufficient
to raise a question of fact for the jury. She fails to recog-
nize, however, that even if the negative evidence were
not sufficient there still remained the allegations that she
turned her vehicle from a direct course upon the highway
when such movement could not have been made with
safety and that she decreased the speed of her vehicle. A
jury could have found wilful and wanton misconduct from
either of these allegations. This court cannot and will not
hold as a matter of law that defendant Smith was not
guilty of wilful and wanton misconduct. It was recognized
in Fosdick v. Servis, 40 Ill App2d 363, 189 NE2d 538, at

367, that "each case depends upon its own peculiar facts, and the question whether a personal injury has been inflicted as a result of wilful and wanton misconduct is ordinarily a question of fact to be determined by the jury, if there is evidence in the record to support it." The evidence in this case, taken with all intendments most favorable to the plaintiffs, is sufficient to support the finding of wilful and wanton misconduct.

 Finally, both defendants argue that the jury's finding of negligence and wilful and wanton misconduct is inconsistent and against the manifest weight of the evidence. In Hulke v. International Mfg. Co., 14 Ill App2d 5, 142 NE2d 717, the court held at 45 that "to be against the 'manifest weight of the evidence' requires that an opposite conclusion be clearly evident." In this case there is ample evidence to support the jury's verdict and, quite to the contrary, an opposite conclusion is not clearly evident.

For the foregoing reasons the judgment of the lower court is affirmed.

Judgment affirmed.

GOLDENHERSH and EBERSPACHER, JJ., concur.