Thomas F. Gainer, Administrator of the Estate of Patricia J. Gainer, Deceased, Plaintiff-Appellant, v. Elgin, Joliet and Eastern Railway Company, a Corporation, Defendant-Appellee.

Gen. No. 67–173.

Second District.

September 23, 1968.

Murphy and Griffin, of Aurora, for appellant.

Alschuler, Putnam, McWethy, Weiss & Weiler, of Aurora, and Hackbert, Rooks, Pitts, Fullagar & Poust, of Chicago, for appellee.

MR. JUSTICE MORAN delivered the opinion of the court.

This is a wrongful death case arising out of a railroad crossing accident. The trial court directed a verdict in favor of the defendant railroad at the close of the plaintiff's case, and the issue on this appeal is whether that action was proper.

The accident happened at about 4:00 p. m. on February 7, 1965, at the defendant's grade crossing on Lockport Road, east of the Village of Plainfield. The decedent, Patricia Gainer, had spent the weekend in Lockport at the home of a married girl friend, Alice Norris. On Sunday, February 7, Patricia became ill at the Norris home. She was helped into the Norris car, to be taken home to Aurora. When the car left the Norris home, Alice Norris was driving, and the decedent was sitting on the passenger side of the front seat.

The plaintiff did not offer any eyewitnesses to the accident. The crossing in question is almost a right angle intersection, with no special hazards involved. A car traveling on the highway has a clear view of the railroad track from a point at least 500 feet away from the track. The Norris car was headed west on Lockport Road, and defendant's train was headed south on the track. The

photographs received into evidence indicate that an automobile driver can see a considerable distance to his right along the track as he approaches the crossing from the east.

The Norris car struck the left side of the front step of defendant's diesel locomotive. Patricia Gainer was killed immediately, and Alice Norris died a short time later.

The investigating police officer, who arrived at the scene a few minutes after the accident, testified that he found a skid mark of about 75 feet in length which had been left by the Norris automobile. The mark was a straight line, ending at the railroad crossing, with no indication that the car had swerved or turned.

The officer testified that it was a rainy day, that it was "foggy," and that the roads were slippery. The witness did not indicate just how "foggy" it was, or to what extent the fog interfered with visibility.

The crossing was equipped with two signal standards, one on the east side of the track, and the other on the west side. Each of these standards contains two flashing lights which alternate back and forth. The lights on both standards are visible from both directions, so that an approaching car sees two sets of flashing lights. The testimony of the police officer established that these flashing signal lights are operated by an automatic circuit which is actuated by the approaching train. The lights continue to flash until the train has cleared the crossing. When the officer arrived at the scene a few minutes after the accident, the flashing signals were all operating. The train had stopped before clearing the intersection, and the flashers continued in operation during the entire time the officer remained at the scene, which was about an hour.

Another witness for the plaintiff was Mrs. John Chwasz, who had lived for 18 years in a house on the

south side of Lockport Road, about 100 feet west of defendant's track. On the afternoon of the accident, she was entertaining her sister-in-law, Mrs. Lottie Seidel, who was visiting her from out of town. The two women were sitting at the kitchen table, talking and drinking coffee. Mrs. Chwasz testified that she did not remember what they were talking about. She suddenly heard a tremendous noise, which was the sound of the train putting on its brakes. She further testified that she did not hear any other noise immediately prior to this sound of the brakes. Mrs. Chwasz admitted that the sound of the train whistle had become a familiar one to her, and that she often just ignored it. She agreed that there were times when she probably did not even hear the whistle —"it's there, but you just don't pay any attention—you know. You are not aware of it."

Lottie Seidel also testified, and her testimony was essentially the same as that of Mrs. Chwasz. She said that she and her sister-in-law were sitting, talking, when they suddenly heard a "big noise," and that she had not been conscious of any other sounds prior to that big noise. Specifically, she said that she had not heard any whistles or bells. Mrs. Seidel did not remember what she and her sister-in-law had been talking about. She admitted that she had not been listening for any railroad whistles or any sound from the outside.

The foregoing evidence, together with some additional testimony to establish decedent's habits of due care, was the substance of plaintiff's evidence on the liability question.

■■ The trial court believed that there was insufficient evidence of defendant's negligence, and we agree. Plaintiff's theory is that the defendant failed to give proper warning of the approach of its train. He points out that the evidence indicates merely that the flasher signals were working *after* the accident. However, as plaintiff himself seems to recognize, the fact that the

signals, actuated by the approach of a train, were found to be working immediately after the accident, is certainly strong circumstantial evidence that they started working when the approaching train triggered them in the normal manner. Moreover, it was not defendant's burden to prove that the flashers were working; it was plaintiff's burden to prove that they were not, if he sought to recover on the basis that they were not. There is obviously a complete absence of any evidence, direct or circumstantial, that the flashers were not working.

Plaintiff argues that, since the weather was foggy, defendant should have known that its flasher signals might not be visible to an approaching driver. He concludes that, under these conditions, defendant had the additional duty of sounding its whistle or bell, even if the two flashers were working. However, the plaintiff offers no evidence that the fog reduced the visibility of the flashing light signals.

Defendant, on the other hand, claims that there is no duty to sound a whistle or bell at a crossing equipped with flashing signals of the type involved here. This argument is based upon General Order No. 176 of the Illinois Commerce Commission, which provides that railroads are excused from sounding a bell or whistle "at such railroad highway grade crossings which are protected by flashing light signals or flashing light signals combined with short-arm gates that are automatically controlled and operated by means of track circuits . . . ." This order was promulgated pursuant to section 6 of the Fencing and Operating Railroads Act (Ill Rev Stats 1965, c 114, § 59), which, after stating that a railroad shall sound its whistle, or horn and its bell at highway crossings, provides that "at crossings where the Illinois Commerce Commission shall by general or special order direct, the railroad may be excused from giving warning provided by this statute."

123

In view of plaintiff's failure to prove that the fog reduced the visibility of the flashing light signals, we believe that, irrespective of the effect of the Commerce Commission Order, the evidence is, as a matter of law, insufficient to support a finding that defendant did in fact fail to sound a warning. The evidence in this regard consisted solely of the "negative" testimony of Mrs. Chwasz and Mrs. Seidel that they did not hear a whistle, horn or bell. This kind of testimony has probative value only when it appears that ". . . the witness was in such proximity that he could have heard the sound had it been given, and that his attitude of attention was such that if the bell or whistle had sounded it would have attracted his attention." Berg v. New York Cent. R. Co., 391 Ill 52, 60, 62 NE2d 676 (1945); Becherer v. Best, 74 Ill App2d 174, 184–185, 219 NE2d 371 (1966). While these two witnesses were close enough to the scene to have been able to hear a bell and whistle, there is nothing about their testimony which would warrant the conclusion that their "attitude of attention" was such that, if it had been sounded, they would have heard it. Accordingly, the fact that they did not hear a whistle, bell or horn, proves nothing, and the trial court properly found that there was no evidence of the defendant's alleged failure to sound a warning.

The parties also argue the question of whether there was sufficient evidence of decedent's due care for her own safety, but, in view of our conclusion that there was no evidence of negligence on the part of the defendant, we do not reach this issue.

The judgment of the lower court will be affirmed.

Judgment affirmed.

ABRAHAMSON, P. J. and DAVIS, J., concur.