DEBRA HUNTER, Successor Adm'r of the Estate of Carl Hunter, Deceased, Plaintiff-Appellant, v. CHICAGO AND NORTH WESTERN TRANSPORTATION COMPANY, Defendant-Appellee.

First District (3rd Division)  No. 1—88—2260

Opinion filed June 20, 1990.—Rehearing denied July 18, 1990.

William J. Harte, Ltd., and Richard J. Prendergast, Ltd., both of Chicago (William J. Harte, Richard J. Prendergast, James Pendergast, and Joseph E. Tighe, of counsel), for appellant.

James P. Daley, George H. Brant, and Daniel J. Mohan, all of Chicago, for appellee.

JUSTICE FREEMAN delivered the opinion of the court:

This appeal arises out of a car-train collision which occurred on April 8, 1972, in Glenview, Illinois. Plaintiff, Debra Hunter, as administrator of the estate of Carl Hunter, deceased, brought suit against defendants, Chicago & North Western Transportation Company (C&NW), and its employees, Robert Markham, John Klysen, and Alfred Johnson. Following a jury trial, a verdict was entered in favor of plaintiff and against C&NW as to count I (survival action)

and in favor of C&NW as to count II (wrongful death action). Plaintiff appeals, contending that: (1) the jury's finding on the percentage of fault attributable to the plaintiff was against the manifest weight of the evidence; (2) the percentage of fault attributed to plaintiff was the result of trial error and improper argument of counsel; and (3) the trial court erred in denying plaintiff's motion for judgment notwithstanding the verdict as to the issue of liability for wrongful death. We affirm.

Lake Avenue is a four-lane highway in Glenview, which runs east and west, and is intersected by a single C&NW railroad track, which runs north and south. Both sides of the railroad crossing are protected by highway warning signs, which are located 600 feet from the crossing, cross-buck "railroad crossing" signs on the shoulders of the road, four flashing lights mounted on masts on the roadside, four overhead cantilevers, and a crossing bell. There are a total of 16 signals, eight facing east and eight facing west.

On April 8, 1972, at about 7:30 a.m., plaintiff's decedent was driving east on Lake Avenue. C&NW's freight train, which had originated in Green Bay, Wisconsin, was proceeding to Chicago. The train maintained a speed of 30 miles per hour, five miles under the legal limit, as it entered the Lake Avenue crossing. Hunter's car and the train collided. Hunter received immediate medical attention for injuries which he sustained as a result of the collision. He died 10 years later, on February 8, 1982, in Centre, Alabama.

John Klysen, a retired engineer for C&NW, testified that at 1,200 feet from the train crossing the signaling devices are supposed to be activated. Since there are usually a few vehicles which continue to cross the tracks after the signals have been activated, the train crew watches the bull's-eyes, which indicate whether the crossing signals are actually flashing. Klysen stated that he faintly recalled that, near the Lake Avenue crossing, there was a fenced-in area on the right side where truck trailers were parked. The trailers were about 40 feet in length, and, at about 300 feet from the crossing, the trailers obstructed his view of approaching eastbound traffic. However, he was able to see the traffic which was about two car lengths back from the crossing and, prior to the collision, he observed one or two vehicles, on both sides of the tracks, stopped at the crossing.

Alfred Johnson (a retired C&NW brakeman), Robert Markham (previously employed by C&NW as a fireman and engineer), and Thomas Crubaugh each testified on behalf of plaintiff pursuant to section 2—1102 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—1102). Markham testified that upon reaching the

whistle stop, he activated the train bell and blew the whistle, giving two longs, a short and a long. He observed that the bull's-eyes were flashing, but he did not recall how many he had seen.

Both Johnson and Markham stated that cars continued to cross the tracks after the activation of the signals. Johnson testified that prior to the collision, he observed two eastbound cars stopped at the crossing. Neither Markham nor Johnson saw decedent's car approach the track.

After the collision, Johnson checked for interference on the train tracks, uncoupled the train cars to permit the passage of traffic and emergency vehicles, and then checked the signals. He stated that he could still hear the train bell ringing and, while he did not notice whether the signals were dirty or snow covered, he could see them flashing.

Crubaugh, the signals engineer and an officer of C&NW, testified that, generally, the Illinois Commerce Commission orders the type of signaling device to be installed at a given crossing. According to him, the cantilevers at the Lake Avenue crossing, which were ordered by the Commission, were installed in March 1959. All of the signals at the crossing are powered by AC power, and in the event of a loss of electrical power, the circuitry of the crossing automatically changes over to a battery-fed system. The voltage to each signal is 9.5 regardless of whether it is powered by electricity or by battery, and an inoperative bulb in any signal will not affect the operation of the other signals.

Crubaugh also testified that the Commission requires a minimum of 20 seconds advance signal warning before a train reaches the crossing. An approaching vehicle at the Lake Avenue crossing has 30 seconds to view the signals before the train reaches the crossing. In response to whether a crossing gate would have made the Lake Avenue crossing safer, Crubaugh stated, not necessarily, because motorists have been known to drive around the gates.

The evidence deposition of Jack DeChristopher, an occurrence witness, was read into the record. On direct examination DeChristopher stated that on the date of the collision he was traveling east, in the curb lane, and the decedent was driving behind him. DeChristopher was traveling at about 30 to 35 miles per hour when the decedent passed him.

DeChristopher first observed the train when it was at the crossing and, according to him, there was nothing about the signaling devices that indicated that the train was approaching. He stated that he heard neither a bell nor a whistle and, while he did not notice the

overhead signals, he did observe that the signaling devices on the curb lane were not operating.

As he approached the crossing, DeChristopher noticed that there was another car stopped to the left of him. He stated that at the time of the collision, decedent's car was two to three car lengths ahead of him; there was only a split second between the time he stopped his car behind the decedent and the collision. After the collision, DeChristopher stood about three feet away from the signaling device on the curbside. The signals were working, but they were not visible because they had a "bad film and were dirty."

On cross-examination DeChristopher testified that he did not skid or slide when he stopped his car, and he never felt in danger of hitting the decedent's car from behind. Defense counsel referred DeChristopher to an earlier statement where, in response to the question of whether the decedent was speeding, DeChristopher responded, "[o]ff the record, yes." Also, in that earlier statement, in response to whether DeChristopher had noticed decedent's car a block or two prior to coming to the tracks, DeChristopher responded, "[w]ell, let's leave it this way for his sake."

Henry DePaepe, the lead signal maintainer for C&NW, testified that in addition to checking for proper operation of the signals, he was required to inspect the lights and insure that they were clean. Each time an inspection is performed the inspector records the date and time of the inspection and the operating condition of the signals in a record book. The book also contains notations of any crossing accidents. In the event of an accident, the signal maintainer is required to immediately turn in the book to his supervisor.

The record book for the Lake Avenue crossing, in which DePaepe had recorded this collision, dated back to 1957. Other than decedent's collision, no others were recorded therein. There was a notation in the book which indicated that the signals at the Lake Avenue crossing had been inspected on April 3, 1972, and that they were "operating okay."

On the date of the collision, DePaepe was called to the scene of the crossing. He observed that the signals facing both the east and west were operating properly. As a result of the collision, the pole, which electrically powered the signals, was down, and the signals were operating on battery power. Nevertheless, according to DePaepe, the signals continued to flash with adequate brightness.

In her second amended complaint, plaintiff alleged a survival action (count I) and a wrongful death action (count II). The jury returned a verdict in favor of plaintiff and against C&NW as to count

I and found that both C&NW and decedent had been negligent. The jury determined the damages to be $1.5 million and attributed 95% of the fault to decedent and 5% to C&NW. The resulting damages award was $75,000. With respect to count II, the jury found in favor of C&NW. The findings as to Markham, Klysen and Johnson are not the subject of this appeal.

Plaintiff's first contention on appeal is that the jury's finding, that plaintiff's decedent was 95% contributorily negligent, was against the manifest weight of the evidence. She seeks a new trial on this issue and urges several factors in support thereof.

■ Before addressing plaintiff's arguments, we first set out the applicable legal standard. A verdict is not against the manifest weight of the evidence unless it is palpably erroneous and wholly unwarranted. (*Frankenthal v. Grand Trunk Western R.R. Co.* (1983), 120 Ill. App. 3d 409, 415, 458 N.E.2d 530.) It is well settled that the jury has the function of resolving conflicts in evidence and the credibility of witnesses. (*Bradfield v. Illinois Central Gulf R.R. Co.* (1985), 137 Ill. App. 3d 19, 23, 484 N.E.2d 365, *aff'd* (1987), 115 Ill. 2d 471, 505 N.E.2d 331.) A reviewing court will examine the record to determine a basis upon which the verdict can be supported. (*Slowik v. Schrack* (1979), 77 Ill. App. 3d 42, 45, 395 N.E.2d 753.) Absent evidence favoring the opposite conclusion, that is clearly evident, this court will not substitute its judgment for that of the jury. *DePaepe v. Walter* (1979), 68 Ill. App. 3d 757, 760, 386 N.E.2d 875.

Plaintiff first argues that between 1959 and the date of decedent's collision, C&NW made no effort to determine the need for a crossing gate even though 18,000 vehicles traversed the crossing daily in 1972. Further, she argues that, at the Lake Avenue crossing, a motorist's view of an approaching train, and a trainman's view of approaching traffic, is obstructed.

■ Defendant has responded that pursuant to an article in the Illinois Commercial Transportation Law, which governs the safety requirements for rail carriers (Ill. Rev. Stat. 1987, ch. 95½, par. 18c—7401(3)), once the Commerce Commission has ordered a particular type of warning device at a crossing, that device is "deemed adequate and appropriate." Defendant correctly maintains, citing to the legislative debates relating to this law, that the legislative intent was that the issue of the adequacy of the warning devices at a crossing, once ordered by the Commission, would no longer be an issue in this type of litigation. Once the Commission has investigated and ordered the installation of a particular kind of warning device, its decision is conclusive, and the railroad is precluded from installing any other

signal. 82nd Ill. Gen. Assem., House Proceedings, April 22, 1982, at 114-23.

We have reviewed the legislative debates, and we note that it was also the intent of the legislature that this law would not "adjudicate any pending litigation." (82d Ill. Gen. Assem., House Proceedings, April 22, 1982, at 116.) Review of the record in this case reveals that this lawsuit, which was commenced with a complaint at law on March 13, 1978, was pending at the time this law was passed. Thus, while the provisions under the safety requirements article represent the current state of the law in Illinois, this was not the applicable law at the time this lawsuit was filed and pending. We are therefore bound to resolve the issues raised by this litigation under the law as it existed prior to the passage of the safety requirements article and as it was stated in *Merchants National Bank v. Elgin, Joliet & Eastern Ry. Co.* (1970), 121 Ill. App. 2d 445, 257 N.E.2d 216, *aff'd* (1971), 49 Ill. 2d 118, 273 N.E.2d 809.

■ We have noted in the past that railroad crossings are inherently dangerous and not every circumstance which might be said to increase the degree of danger will impose a duty upon the railroad to provide extraordinary means to protect it. (*Merchants*, 121 Ill. App. 2d at 445.) Notwithstanding that, the fact that the Illinois Commerce Commission has not ordered a certain warning or signaling device at a crossing does not thereby relieve a railroad of negligence in not providing such a device. (*Merchants*, 121 Ill. App. 2d at 456.) The amount of protection required is dependent upon the circumstances existing at the particular crossing, at the particular time of the approach of the vehicle. (*Merchants*, 121 Ill. App. 2d at 456.) Factors to be considered in determining the amount of protection include population and traffic in the area, physical obstructions to view, and the effect which confusion, incident to railroad or other business in the area, would have on the sight or hearing of ordinary signals. *Merchants*, 121 Ill. App. 2d at 456.

■ Here, the collision occurred on a Saturday at about 7:30 a.m., and the weather was clear. Even though plaintiff presented testimony of the high volume of daily traffic on Lake Avenue, there was no evidence presented which would indicate that, at the time of this collision, the traffic was heavy. It is undisputed that the view of the train was obstructed until a motorist was within 350 feet of the train crossing. However, in light of the testimony that the warning signals were present and operational, whether the obstructed view would require the railroad to upgrade the crossing signals was properly a question for the jury. (*Bassett v. Burlington Northern R.R. Co.*

(1985), 131 Ill. App. 3d 807, 812, 476 N.E.2d 31.) Finally, there was no evidence to indicate that the ordinary operation of businesses in the area impaired the sight or hearing of the crossing signals.

Plaintiff next argues that the overhead signaling devices for the eastbound traffic were either not operating or were not visible within the mandated 800 feet range, nor were the roadside signals visible from as close a distance as three feet. As support for her argument that the signals were not operating properly, plaintiff points to testimony that after the devices were "allegedly" activated traffic continued to cross the tracks.

First, the record reveals that Crubaugh testified that the Commerce Commission requires that the signals be visible from as far away as 800 feet from the crossing, and as close as 25 feet from it. Thus, according to him, very close proximity to a signal renders it not visible. Second, we reject plaintiff's assertion that continuing traffic was evidence that the signals were nonoperational. The testimony at trial was that after the signals were activated, cars appeared to slow, look and then cross. We do not believe it to be an uncommon practice for a motorist, after observing the warning signals of an approaching train, to attempt to cross the railroad tracks regardless of the warnings.

Plaintiff then argues that the only evidence to support defendant's claim that the signals were operating properly was the testimony of Philip Noll, who stated that he observed the signal over the westbound lane. As further support for her argument, she maintains that neither Noll nor DeChristopher was able to testify that he had observed the signals operating prior to the collision and that Klysen neither observed the bull's-eyes nor did he know whether they were working.

Plaintiff has mischaracterized the testimony of Noll and Klysen. Philip Noll testified that on the date of the incident he was driving east, on the inside lane, on Lake Avenue. He noticed that the signal on the left-hand side and the cantilevers over the roadway were flashing. He also heard the train whistle blow and noticed that a car approaching from the west had slowed down to stop. Noll slowed down as well. He stated that he was about 35 feet from the tracks when he first noticed "this activity," but that he had noticed the signals when he was farther back. After the collision, when Noll looked at the signals, it appears to him that, as a result of the collision, snow had been splashed up on the lower right signal around the collar area. He could not remember whether he saw any snow or a film on the lens itself. On cross-examination, Noll stated that prior to see-

ing the train he did not recall hearing the whistle and he admitted that, in a prior statement, he had stated that the lenses on the signals were covered with a dirt film and were not bright.

In response to plaintiff's questions whether he had seen the flashing signal over the westbound traffic, Noll stated that he was not certain whether he first observed the overhead flasher or the one in the lower corner. In response to whether he had seen the flashing light on the north shoulder for the westbound traffic, Noll stated that it was not the first thing that he saw; the first thing he saw was the overhead signal.

After review of Noll's testimony, it is apparent to us that his answers focused on which signal he had first observed; not on the fact that plaintiff's attorney was asking about westbound, as opposed to eastbound, traffic. Although inconsistent about which signal he observed first, Noll's testimony was that, upon approaching the crossing, his attention was drawn by the flashing signals.

Klysen testified that he observed that the bull's-eyes for the right side of the highway were flashing; however, he could not recall whether the overhead signals were also flashing. The only witness to testify that the flashers were not working prior to the collision was DeChristopher, who also stated that he observed them to be working after the collision.

The testimony of the train crew and Noll, who testified that the flashers were working, produced a conflict with the testimony of DeChristopher. It was for the jury, as trier of fact, to weigh these conflicts in evidence, to judge the credibility of the witnesses and to draw the ultimate conclusions from the facts. (*Lee v. Grand Trunk Western R.R. Co.* (1986), 143 Ill. App. 3d 500, 512, 492 N.E.2d 1364.) Here, the jury apparently concluded that the signals were flashing properly. Further, it was not defendant's burden to prove that the flashers were working, but rather, it was for plaintiff to prove that they were not working if she sought to recover on that basis. (*Gainer v. Elgin, Joliet & Eastern Ry. Co.* (1968), 99 Ill. App. 2d 119, 123, 240 N.E.2d 712.) Moreover, the fact that signals, activated by an approaching train, were found to be working immediately after the collision is strong circumstantial evidence that they started working when the approaching train triggered them in the normal manner. *Gainer*, 99 Ill. App. 2d at 123.

Finally, plaintiff attempts to draw an analogy between *Magnone v. Chicago & North Western Transportation Co.* (1984), 126 Ill. App. 3d 170, 466 N.E.2d 1261, wherein the plaintiff was found to be 25% negligent, and the present case. In *Magnone* the evidence revealed

that defendant's railroad crossing gates could malfunction even though the flashers worked properly. On the morning of the car-train collision, witnesses had observed that the gates were operating abnormally. (126 Ill. App. 3d at 178-79.) The defendant failed to present any evidence to negate this evidence. (*Magnone,* 126 Ill. App. 3d at 179.) A witness testified that in response to the signals, he had stopped, and that he observed the decedent's car crossing toward him from the opposite lane. The court there noted that the decision in the case had to be based on circumstantial evidence since no one had observed the gate at the crucial moments prior to the accident. The court found plaintiff to have been only 25% comparatively negligent. *Magnone,* 126 Ill. App. 3d at 180.

Plaintiff analogizes that, in the instant case, there were no gates and that no one could testify that the overhead flashing lights were operating immediately prior to the accident. In addition, the view was obstructed, and there was no competent evidence concerning decedent's conduct prior to the accident sufficient to establish the degree of his fault. Thus, she concludes that the jury's 95% finding of negligence is against the manifest weight of the evidence.

We fail to see the value of *Magnone* to plaintiff's case. Here, unlike in *Magnone,* even though DeChristopher testified that the signals were not working, there was sufficient other testimony presented to rebut his version of the facts. We believe that the verdict is amply supported by the evidence, and further recitation of the facts concerning the operation of the signals, and the obstruction to the view, is unnecessary.

■ In summary, the jury heard testimony that the signals were flashing before and after the collision, that the train whistle was blowing and the crossing bell was ringing, that the signals at the stop had been inspected four days prior to the collision, that as the train approached there were cars stopped on both sides of the crossing, that the view of the train was unobstructed at a point 350 feet from the crossing, and that the train was traveling within the legal speed limit. Based on these facts we believe that the jury could reasonably find that the decedent was 95% responsible for the collision. Thus, we conclude that the result reached below was not against the manifest weight of the evidence.

Plaintiff's second contention on appeal is that the jury's finding of the degree of fault attributable to decedent was the result of improper argument of defense counsel and trial errors. Specifically, she asserts that in closing argument defendant should not have been permitted to comment on plaintiff's failure to present testimony of the

decedent. She argues that, since much of the evidence at trial had been presented by way of evidence depositions and the decedent's discovery deposition, which had been taken by defendant, had been excluded from evidence on defendant's motion, it was improper for defendant to comment on the missing testimony.

Defendant counters that the comments were not improper. He points out that decedent lived for 10 years after the collision and that plaintiff's attorney had ample opportunity to depose him. Further, in his opening statement, plaintiff's counsel told the jury how evidence could be preserved through the use of evidence depositions.

■■ Generally, a party's failure to call a witness who is within its control is a proper subject of comment in closing argument. (*Foerster v. Illinois Bell Telephone Co.* (1974), 20 Ill. App. 3d 656, 662, 315 N.E.2d 63.) However, it is reversible error for counsel to comment on inadmissible or excluded evidence. *Gillson v. Gulf, Mobile & Ohio R.R. Co.* (1969), 42 Ill. 2d 193, 246 N.E.2d 269.

■■ Even if the comments here were improper, any error was corrected by the trial court. The trial judge sustained plaintiff's objection to the comments and also admonished the jury as to the effect of remarks made by counsel which were not in evidence. Finally, no instruction was tendered or given concerning the inference to be drawn from the failure of a party to present evidence. See Illinois Pattern Jury Instructions, Civil, No. 5.01 (2d ed. 1971).

Plaintiff directs this court's attention to *Fraher v. Inocencio* (1984), 121 Ill. App. 3d 12, 459 N.E.2d 11, and urges us to follow its reasoning. In *Fraher,* a car accident case, plaintiff was granted a motion *in limine* to exclude certain remarks concerning her intoxication. (121 Ill. App. 3d at 14.) Plaintiff had been drinking, but she was not intoxicated at the time of the accident. At trial, the defense attorney stated that there had been no evidence that plaintiff had not been drinking. (*Fraher,* 121 Ill. App. 3d 12, 459 N.E.2d 11.) The trial court sustained plaintiff's objection to the comment. On appeal, the court held that the remark had unfairly prejudiced the plaintiff's case and found that an additur was an appropriate cure. *Fraher,* 121 Ill. App. 3d at 17.

We believe the comments here differ from those in *Fraher.* The comments in *Fraher* specifically referred to plaintiff's conduct preceding the accident. This was substantive evidence of her contribution to the accident. Here, the comments related to the absence of evidence generally. The comment included no reference to decedent's conduct or to any other substantive evidence to show his contribution to the collision.

Plaintiff next argues that she was erroneously precluded from introducing evidence of C&NW's subsequent installation of crossing gates. She argues that, by precluding her use of the evidence that C&NW did not install a crossing gate until nine years after the decedent's collision, she was denied the opportunity to impeach Crubaugh's testimony that one of the factors considered by the railroad in determining the need for crossing gates would be the occurrence of an accident.

■■ Generally, evidence of post-occurrence changes is not admissible to prove negligence. (*Schaffner v. Chicago & North Western Transportation Co.* (1989), 129 Ill. 2d 1, 14, 541 N.E.2d 643; *Bargman v. Economics Laboratory, Inc.* (1989), 181 Ill. App. 3d 1023, 537 N.E.2d 938.) The underlying policies for the rule are that a post-occurrence change is not sufficiently probative of prior negligence and that correction of unsafe conditions should not be deterred by the possibility that such correction will constitute an admission of negligence. (*Dillon v. United States Steel Corp.* (1987), 159 Ill. App. 3d 186, 198, 511 N.E.2d 1349; *Salvi v. Montgomery Ward & Co.* (1986), 140 Ill. App. 3d 896, 489 N.E.2d 394.) However, such evidence may be admissible for impeachment purposes. *Lubbers v. Norfolk & Western Ry. Co.* (1986), 147 Ill. App. 3d 501, 515, 498 N.E.2d 357; M. Graham, Cleary & Graham's Handbook of Illinois Evidence §407.1 (4th ed. 1984).

■■ We fail to see how the fact of the subsequent gate installation would serve to impeach Crubaugh's testimony. The fact that a gate was installed nine years after the collision would not serve to show a lack of consideration or that Crubaugh had been untruthful in his testimony. Moreover, the policies which underlie the rule against admission of such evidence far outweigh the minimal benefit, if any, that plaintiff might have gained had she been permitted to present this evidence.

Plaintiff next assigns error to the fact that defendant was permitted to introduce evidence of the absence of accidents between the years of 1959 and 1972 without first laying a proper foundation. She argues, relying on *Leischner v. Deere & Co.* (1984), 127 Ill. App. 3d 175, 468 N.E.2d 182, that defendant failed to show that there was a similarity in traffic volume, train traffic, obstructions to view and the condition of the signal devices during that period.

Plaintiff's objection refers to testimony given by DePaepe concerning the record book, and to Markham's testimony that since he had been employed by C&NW, there had been no collisions at the Lake Avenue crossing. Plaintiff did not object either to the admissi-

bility of the record book or to Markham's testimony. Instead, at the close of defendant's case, plaintiff moved that the evidence be stricken.

Defendant counters that the presentation of the testimony was in response to plaintiff's allegation that the signaling devices were not sufficient to provide adequate safety at the crossing. Therefore, defendant argues, since the issue was the safety devices themselves, it was a sufficient foundation to present testimony that the cantilevers were installed in 1959 and that the same signaling devices were present at the time of the 1972 collision.

We agree with plaintiff that there was no proper foundation for the admission of this evidence. While the ultimate issue was the adequacy of the signaling devices, resolution of that issue would necessarily be dependent upon factors such as traffic volume and obstructions to view. However, we need not reach the merits of plaintiff's argument since we deem her objection to have been waived.

■ An objection to evidence must be timely made and must specify the reasons therefor. (*People v. Trefonas* (1956), 9 Ill. 2d 92, 136 N.E.2d 817; *Hargrove v. Neuner* (1985), 138 Ill. App. 3d 811, 816, 485 N.E.2d 1355.) Generally, timeliness requires that the objection to evidence be made at the time of its admission. (*Johnson v. Hoover Water Well Service, Inc.* (1982), 108 Ill. App. 3d 994, 1006-07, 439 N.E.2d 1284; *Foster v. Englewood Hospital Association* (1974), 19 Ill. App. 3d 1055, 313 N.E.2d 255.) A motion to strike after the plaintiff has rested, and before the close of the case, has been held to be untimely. (See *Johnson*, 108 Ill. App. 3d at 1006.) Here, by delaying her motion to strike until the evidence was admitted and defendant had rested, plaintiff's objection was not within apt time. *Foster*, 19 Ill. App. 3d at 1072-73.

Plaintiff's third and final contention on appeal is that the trial court erred in denying her motion for judgment notwithstanding the verdict on the issue of C&NW's liability for decedent's wrongful death. Plaintiff argues that the only evidence as to the cause of decedent's death was the testimony of Dr. Bradley and decedent's wife, Helen Hunter. Since this testimony was not contradicted the jury could not properly disregard it. Therefore, plaintiff argues that a verdict on liability should be entered in her favor and a new trial ordered solely on the question of damages or, in the alternative, a new trial should be ordered on the issues of liability and damages.

Defendant responds that the testimony of Dr. Bradley was contradictory and speculative and that it must therefore be rejected. His argument is supported by citation to *Pumala v. Sipos* (1987), 163 Ill.

App. 3d 1093, 517 N.E.2d 295, *Manion v. Brant Oil Co.* (1967), 85 Ill. App. 2d 129, 229 N.E.2d 171, and similar cases.

■■■ In considering whether a judgment should be granted notwithstanding the verdict, we follow the supreme court's holding in *Pedrick v. Peoria & Eastern Ry. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504. Judgments should be entered only where "all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand." 37 Ill. 2d at 510.

Plaintiff presented the testimony of Dr. Bradley by an evidence deposition. Dr. Bradley treated the decedent from 1973 until the decedent's death in February 1982. Based upon decedent's medical history and his condition in October 1973, Dr. Bradley stated that, to a reasonable degree of medical certainty, decedent was then permanently disabled and that his disability was proximately caused by the injuries sustained in the collision. In his opinion, decedent's death was causally related to the car-train collision.

On cross-examination, Dr. Bradley stated that he had not begun to treat decedent until more than one year after the collision had occurred. Dr. Bradley also testified that decedent's maladies could have been the result of causes other than the injuries sustained in the collision, such as his 10-year, two-pack-per-day smoking habit, prior illnesses, and a family history of poor health. However, on redirect examination, Dr. Bradley maintained that, based on reasonable medical certainty, decedent's death was causally related to the collision.

■■■ There is no requirement that the testimony of a medical expert be based on absolute certainty; only a reasonable degree of medical and scientific certainty is necessary. (*Frankenthal v. Grand Trunk Western R.R. Co.* (1983), 120 Ill. App. 3d 409, 419, 458 N.E.2d 530.) However, an expert is not permitted to guess or to speculate. *Frankenthal*, 120 Ill. App. 3d at 419.

■■■ We do not agree with defendant that because another explanation for decedent's death was possible, Dr. Bradley's testimony was thereby rendered contradictory and speculative. Dr. Bradley steadfastly testified that, to a medical certainty, the auto-train collision was the cause of decedent's death. However, a jury is not bound to accept the opinion of an expert on an ultimate issue. (*Harris v. Bethlehem Steel Corp.* (1984), 124 Ill. App. 3d 449, 464 N.E.2d 634; *Batteast v. Wyeth Laboratories, Inc.* (1988), 172 Ill. App. 3d 114, 134, 526 N.E.2d 428, *appeal allowed* (1988), 123 Ill. 2d 556, 535 N.E.2d 398.) Here, in addition to the testimony that decedent's death was ultimately caused by the collision, the jury also heard that other

factors could have caused his death. We believe that the jury heard enough evidence upon which it could securely base its decision of non-liability, and no opposite conclusion is clearly evident.

For the foregoing reasons we affirm the judgment of the circuit court.

Affirmed.

CERDA, P.J., and WHITE, J., concur.