CATHERINE C. MARTIN, as Special Adm'r of the Estate of David Martin, Deceased, Plaintiff-Appellee, v. ILLINOIS CENTRAL GULF RAILROAD, Defendant-Appellant.

First District (4th Division)   No. 1—90—0998

Opinion filed December 31, 1991.—Rehearing denied December 10, 1992.

912

Williams & Montgomery, Ltd., of Chicago (James K. Horstman, Barry L. Kroll, Mark A. Miller, and Lloyd E. Williams, Jr., of counsel), for appellant.

Ialongo & Meyer, of Chicago (James G. Meyer, A. Mark Ialongo, and Fred Lambruschi, of counsel), for appellee.

JUSTICE JOHNSON delivered the opinion of the court:

This appeal arises from a railroad crossing accident that occurred on December 8, 1981, when a vehicle driven by David Martin collided with a train in Lemont, Illinois. Plaintiff, Catherine Martin, as special administrator of the estate of David Martin, deceased, brought suit against defendant, Illinois Central Gulf Railroad (the Railroad). The circuit court of Cook County entered judgment on jury verdicts in favor of plaintiff and against defendant as to count I (negligence) and count II (willful and wanton misconduct). Defendant's post-trial motion for judgment notwithstanding the verdicts was denied, and defendant filed a timely notice of appeal.

On appeal, defendant contends that the trial court erred when it (1) denied its motions for directed verdicts on count I (negligence) and count II (willful and wanton misconduct); (2) ruled that Martin's negligence would not be compared with its willful and wanton misconduct; (3) admitted evidence of the Illinois Commerce Commission proceedings concerning the suggested upgrading of the Industrial Street crossing; (4) denied statistical evidence regarding statewide railroad crossings; (5) limited cross-examination of plaintiff's expert witness; and (6) restricted its evidence on damages.

We affirm in part and vacate in part.

On December 8, 1981, David Martin was killed when his vehicle collided with a train owned and operated by the Railroad at Industrial Street in Lemont, Illinois. The Railroad runs through Lemont, in an east-west direction, and Industrial Street crosses the tracks in a north-south direction. New Avenue, a main street in Lemont, runs immediately south and parallel to the railroad tracks. Industrial Street, which intersects New Avenue and crosses the tracks, provides access to several small industries and at least one residence on the north side of the tracks.

On the day of the accident, Martin was driving his vehicle westbound on New Avenue while the train was traveling on the tracks in the same direction behind Martin. Martin turned right onto Industrial Street and attempted to cross the railroad tracks when his vehicle was struck by the train. Both the train and Martin's vehicle were traveling within the applicable speed limits. The train was 90 to 135 feet from the Industrial Street crossing when Edwin Parker, the engineer, realized that Martin's vehicle would not clear the tracks. Parker testified that he engaged the train's emergency stop about two seconds before impact, but could not stop the train in time to avoid a collision.

The only evidence to describe Martin's actions prior to the collision was the testimony of James Miller, the conductor of the train. Miller testified that immediately before the accident he saw Martin looking to his left, away from the train as he drove over the tracks. The weather was bright and sunny and visibility was clear for about one-half mile down the railroad track. Martin was familiar with the Industrial Street crossing. He travelled over the crossing several times a day.

The Industrial Street crossing was equipped with an autoflag device to warn drivers and pedestrians of approaching trains. The autoflag activates when an approaching train reaches a switch point about three-quarters of a mile from the crossing. The autoflag consists of flashing lights, two sets of ringing bells, and a moving pendulum. At the time of the accident, the bells, lights, and swinging pendulum were operating properly.

Plaintiff filed a negligence action against the Railroad, alleging that it failed to adequately maintain the railroad crossing in a safe condition. Specifically, plaintiff alleged that defendant failed to equip the crossing with protective gates and failed to give audible warning of approaching trains. After discovery had commenced, plaintiff filed an amended complaint, charging that defendant was guilty of willful and wanton misconduct by maintaining the railroad crossing in a dangerous condition. Specifically, plaintiff alleged that defendant failed to inventory the crossing as a public crossing and failed to provide city officials with a cost estimate for the installation of automated flashing light signals and gates for the Industrial Street crossing.

Plaintiff's expert witness, Harold Michael of Purdue University, testified that in his opinion, the wigwag signal at Industrial Street was an ineffective device to warn motorists of approaching trains. He testified that the wigwag system was difficult for motorists to see from New Avenue and only after a motorist turned onto Industrial Street was the wigwag apparent. He further stated that after a motorist turned onto Industrial Street (60 feet from the track) it is too late for the signal to be very effective. Michael testified that the fact that the Railroad had a double main track was sufficient to warrant installation of gates and flashing lights. He also testified that installing gates and lights would have corrected the safety problems at the crossing.

At trial, plaintiff asserted that defendant incorrectly inventoried the Industrial Street crossing as a private crossing six years before the accident, thus removing it from the Railroad's jurisdiction. Bernard Morris, chief railroad engineer for the Illinois Commerce

Commission (ICC), testified that there were rules and guidelines as to what constitutes private and public crossings and that the Railroad had the opportunity to designate the crossing as public when it did its 1974 inventory. Morris further testified that, after the 1974 inventory, the ICC had authority to change the designation of a crossing from private to public, and that both the local highway authority and the railroad company had the right under ICC rules to request a change in crossing designation. Defendant stated that the only way the crossing could have been brought within the jurisdiction of the ICC was for "someone" to petition the ICC to recognize it as a public crossing. Defendant contends that the petitioning process had not been initiated prior to the date of Martin's accident and that it could do nothing with respect to upgrading the crossing. Plaintiff's evidence established that had the Industrial Street crossing been designated a public crossing it would have met the ICC criteria for installation of gates and flashing lights. Morris stated that in his 25 years with the ICC he had never seen a wigwag signal installed at a public crossing.

The trial court, over objection of defendant, permitted plaintiff to introduce evidence that city officials and a representative from the ICC had requested the Railroad to upgrade the Industrial Street crossing in January 1981. John Bracken, then mayor of Lemont, testified that a meeting was held to discuss complaints about the Spruce Street crossing. He further stated that the participants also discussed and viewed the Industrial Street crossing and proposed that the signals at the crossing be upgraded.

On December 12, 1989, the jury returned verdicts for plaintiff on the negligence count for $1,710,000 and the willful and wanton misconduct count for the same amount. On the negligence count, the jury found that Martin's negligence contributed to 44% of the damage and thereby reduced the verdict to $957,600. On the second count, the jury found that Martin's willful and wanton misconduct contributed to 35% of the damage and reduced the verdict to $1,111,500. Judgment was entered on the verdicts and defendant appealed.

First, defendant argues that the trial court erred in refusing to grant its motion for judgment notwithstanding the verdict or, in the alternative, for a new trial on both the negligence and willful and wanton misconduct counts. Defendant contends that the evidence on both counts was insufficient to warrant submission of the case to a jury.

"A motion for judgment notwithstanding the verdict should be granted when all the evidence, viewed in the light most favorable to the nonmoving party, so overwhelmingly favors the movant that no contrary verdict could ever stand." (*Downing v. United Auto Racing Association*

(1991), 211 Ill. App. 3d 877, 883-84, citing *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 503.) A motion for a new trial should not be granted unless the jury's verdict is against the manifest weight of the evidence. (*Downing*, 211 Ill. App. 3d at 884.) "A verdict is not against the manifest weight of the evidence unless it is palpably erroneous and wholly unwarranted." *Hunter v. Chicago & North Western Transportation Co.* (1990), 200 Ill. App. 3d 458, 465.

Defendant maintains that under the holding in *Robertson v. New York Central R.R. Co.* (1944), 388 Ill. 580, when a train and a person in a motor vehicle approach a railroad crossing simultaneously, it is the duty of the motorist to stop and not attempt to pass in front of the train. It is not the duty of the railroad to stop its train. Defendant further asserts that under Illinois law, it is not required to anticipate and guard against the possibility that Martin would disregard its warning; rather, it had a right to assume Martin would exercise due care for his own safety. (*Sheahan v. Northeast Illinois Regional Commuter R.R. Corp.* (1991), 212 Ill. App. 3d 732, 737-38.) Defendant further contends that the Industrial Street crossing was equipped to give adequate warning of approaching trains, and it was Martin's negligence that caused the collision. Plaintiff contends that defendant failed to maintain the crossing in a safe condition and that its failure to take reasonable steps to avoid a collision at the crossing was the proximate cause of Martin's death.

■ "A railroad has a common [law] duty to provide adequate warning devices at its crossings." (*Bassett v. Burlington Northern R.R. Co.* (1985), 131 Ill. App. 3d 807, 811.) "[T]he fact that the Illinois Commerce Commission has not ordered a certain warning or signaling device at a crossing does not thereby relieve a railroad of negligence in not providing such a device." (*Hunter v. Chicago & North Western Transportation Co.* (1990), 200 Ill. App. 3d 458, 466.) "[T]he amount of protection required at a crossing is strictly a jury question to be determined from the facts and circumstances of each case." (*Bassett*, 131 Ill. App. 3d at 813.) Among the factors to be considered are physical obstructions to view, population and traffic in the area, and "the effect which confusion, incident to railroad or other business in the area, would have on the sight or hearing of ordinary signals." *Hunter*, 200 Ill. App. 3d at 466.

To establish that a defendant is negligent, a jury must find that defendant failed " 'to do something which a reasonably careful person would do, or [did] something which a reasonably careful person would not do under circumstances similar to those shown by the evidence.' " (*Burke v. 12 Rothschild's Liquor Mart, Inc.* (1991), 209 Ill. App. 3d 192, 205, quoting *Haymes v. Catholic Bishop* (1968), 41 Ill. 2d 336, 339.) A

party is guilty of willful and wanton misconduct when his actions demonstrate " 'an utter indifference to or conscious disregard for the welfare of the plaintiff.' " (*Burke*, 209 Ill. App. 3d at 205, quoting *Adkins v. Sarah Bush Lincoln Health Center* (1989), 129 Ill. 2d 497, 518; see also Illinois Pattern Jury Instructions, Civil, No. 14.01 (3d ed. 1991).) In order to find that a defendant is guilty of willful and wanton misconduct, it must be shown that a defendant had "actual or constructive knowledge that his conduct posed a high probability of serious physical harm to others." (*Downing v. United Auto Racing Association* (1991), 211 Ill. App. 3d 877, 884.) The evidence must disclose that the defendant was not merely careless, but reckless, in his disregard of the danger created by the circumstances. *Downing*, 211 Ill. App. 3d at 884.

There is ample evidence in the record upon which a jury could find that defendant failed to act in a reasonably careful manner in providing adequate protection at the crossing. The record reveals that motorists traveling westbound on New Avenue encountered visibility problems with the wigwag signal prior to turning onto Industrial Street. Plaintiff's expert witness testified that the wigwag signal, which was placed behind a separate post and crossbuck sign, was obscured from the vision of turning vehicles. In addition, the chief railroad engineer for the ICC (Morris) testified that wigwag signals were "pretty ineffective today" as a warning to motorists because of closed windows and soundproofing. Acknowledging that only the ICC was authorized to "designate" the Industrial Street crossing as a public crossing, it appears that defendant failed to take reasonable action in requesting a change in the designation. The Railroad is responsible for maintaining the crossing and was in the best position to determine whether a change in the crossing's designation was warranted. Although defendant's expert witness testified that the wigwag signal was "effective," he admitted that wigwag signals have not been installed in the United States in the past 25 years. The fact that the ICC did not designate the Industrial Street crossing as "public" did not relieve defendant of negligence in not installing automated gates and flashing lights. (See *Hunter v. Chicago & North Western Transportation Co.* (1990), 200 Ill. App. 3d 458, 466.) In fact, the evidence established that ICC officials requested the Railroad to upgrade the crossing notwithstanding the fact that it was a "private" crossing.

We also believe the jury heard sufficient evidence to conclude that defendant was guilty of willful and wanton misconduct in maintaining its property in a dangerous condition.

Plaintiff produced evidence which tended to establish that defendant was aware the Industrial Street crossing presented a substantial risk of

injury to motorists crossing the track from New Avenue. The jury heard evidence that a similar car-train accident occurred at this crossing 18 months before Martin's accident. In the earlier collision, the motorist had been traveling westbound on New Avenue. Like Martin, the motorist turned right onto Industrial Street and attempted to cross the track when he was hit by a train. The railroad claims agent who investigated both accidents testified that the warning device at the Industrial Street crossing in the prior accident was the same as existed at the time of Martin's accident. Defendant maintains that plaintiff failed to establish the similarity between the two accidents. However, we believe it is for the jury to weigh the evidence and determine whether the circumstances of the prior accident were sufficient to give defendant notice of the dangerous condition.

Plaintiff also contends that defendant's failure to provide a cost estimate for the suggested upgrading of the Industrial Street crossing was in "conscious disregard" of its duty to provide a safe railroad crossing. In January 1981, B.E. Hight, senior field signal engineer for the Railroad, sent a memo to his superior stating that the Village of Lemont and the ICC requested a cost estimate for the installation of automated flashing light signals and gates at the Industrial Street crossing. A drawing was attached to the memo showing the survey work was completed and all that was remaining was the design work and the cost estimation. In a second memorandum, Hight requested that the cost estimate be prepared by March 2, 1981. Thomas Kremer, chief of the Railroad's signal department, testified that the preparation of a cost estimate would take anywhere from two hours to two days to complete. Bernard Morris of the ICC testified that no cost estimate was produced as of December 8, 1981, and that the Railroad was experiencing delays in the production of cost estimates at that time. The jury also heard testimony that the delay was due to an influx of Federal funding for similar projects. Defendant's witness testified that many railroads delayed their submissions of cost estimates until a hearing is held to determine whether and to what extent crossing signals should be modified.

■ Whether defendant's nine-month delay in submitting a cost estimate to upgrade the crossing constituted willful and wanton misconduct in light of the fact that it had knowledge of a prior accident was properly a question for the jury. This court will not substitute its judgment for that of the jury absent evidence favoring the opposite conclusion that is clearly evident. (*Hunter v. Chicago & North Western Transportation Co.* (1990), 200 Ill. App. 3d 458, 465.) We do not believe the jury's verdicts were unsupported by the evidence nor were they against the manifest weight of the evidence. We therefore hold that the trial court

did not err in denying defendant's motion for judgment notwithstanding the verdicts or, in the alternative, for a new trial on either the negligence count or the willful and wanton misconduct count.

■ Defendant argues that even if it was negligent or guilty of willful and wanton misconduct, there is no evidence establishing how its actions were the proximate cause of the accident. Plaintiff argues that if lights and gates had been installed prior to the accident the collision would have been avoided. She further asserts that the cause of death was defendant's failure to upgrade the crossing by installing lights and gates at the crossing.

When reviewing questions of negligence and proximate cause, we will not disturb the fact finder's decision unless it is clearly unwarranted by the evidence, and where there may be several reasonable inferences based upon the evidence, the inference drawn by the fact finder must prevail. (P.A.M. Transport, Inc. v. Builders Transport, Inc. (1991), 209 Ill. App. 3d 889, 892.) After reviewing the record, we do not believe the jury's finding of proximate cause is "clearly unwarranted" and, therefore, we will not disturb its decision.

■ Next, defendant contends the jury's finding that its alleged negligence and willful and wanton misconduct were greater than those of the decedent is not supported by the record.

"A jury's finding on the issue of comparative negligence will not be set aside on review absent a finding that the verdict is contrary to the manifest weight of the evidence." (Rainey v. City of Salem (1991), 209 Ill. App. 3d 898, 905.) The jury found that defendant's failure to provide adequate protection at the Industrial Street crossing was a proximate cause of Martin's death. The jury also found that Martin's actions in failing to watch for the train and stop his vehicle contributed to his own death. We are satisfied that the jury properly compared Martin's misconduct in assessing the parties' degree of fault.

■ Defendant also argues that the irreconcilable inconsistency in the verdicts on count I and count II requires that the case be reversed and remanded for a new trial. We disagree. Both verdicts found that the total damages suffered by plaintiff amounted to $1,710,000. However, the jury's determination on the degree of plaintiff's comparative fault differed in regard to the counts. The verdicts found plaintiff to be 44% comparatively negligent in count I and reduced the verdict to $957,600. Plaintiff was found 35% comparatively at fault on the willful and wanton misconduct count, and the verdict was accordingly reduced to $1,111,500. We believe the jury clearly understood the instructions and the concept that the evidence presented two separate theories of recovery upon which the parties' responsibility may differ. Moreover, we be-

lieve the jury's verdicts resulted in an equitable apportionment of compensatory damages between plaintiff and defendant based upon their relative degree of fault.

We recognize that when both negligence and willful and wanton misconduct counts arise from a wrongful death action there can only be one recovery. (*Churchill v. Norfolk & Western Ry. Co.* (1978), 73 Ill. 2d 127, 147.) In *Hough v. Mooningham* (1986), 139 Ill. App. 3d 1018, this court held that when "the trier of fact returns separate plaintiff's verdicts on both negligence and wilful and wanton misconduct counts, the law will presume that the defendant has been found liable for wilful and wanton misconduct, the more serious charge." *Hough*, 139 Ill. App. 3d at 1021, citing *Churchill*, 73 Ill. 2d at 146-47.

The trial court should have entered judgment for plaintiff only on the willful and wanton misconduct count. However, although the trial court erred in entering judgments on both counts, reversal or remand is not necessary. Pursuant to our authority under Supreme Court Rule 366(a)(5) (87 Ill. 2d R. 366(a)(5)), we hold as follows: On the willful and wanton misconduct count, judgment is entered in favor of plaintiff and against defendant, and plaintiff is awarded $1,111,500; on the negligence count, judgment is vacated.

Having concluded that the jury's verdict on the willful and wanton misconduct count resulted in an equitable apportionment of compensatory damages between plaintiff and defendant, we need not address defendant's contention that the trial court's instruction that the parties' respective negligence was to be compared in count I and their respective willful and wanton misconduct was to be compared in count II was improper.

■ Thirdly, we must determine whether the trial court erred in admitting evidence of ICC proceedings concerning the suggested upgrading of the Industrial Street crossing.

Defendant contends that the evidence of the ICC's inquiry is irrelevant and prejudicial. Defendant contends that there was nothing in the evidence to suggest that the Industrial Street crossing was unsafe. It further asserts that the village officials did not urge upgrading the crossing on the basis that it was unsafe, but, rather, as a general improvement in public safety. Defendant argues that this type of "wish list" testimony constitutes reversible error. (*Maltby v. Chicago Great Western Ry. Co.* (1952), 347 Ill. App. 441.) Plaintiff counters that evidence of the ICC proceedings was not only admitted to show notice, but weighed on allegations of willful and wanton misconduct. Under the holding in *Ferguson v. Kasbohm* (1985), 131 Ill. App. 3d 424, plaintiff's burden of proof in the willful and wanton misconduct count required her

to establish defendant had knowledge of a situation requiring due care to avert injury; the ability to avoid the harm; and an omission to use care and diligence to avert the harm. (*Ferguson*, 131 Ill. App. 3d at 429.) Plaintiff contends that the evidence was properly admitted to show defendant had knowledge of safety problems at the Industrial Street crossing and that defendant had an opportunity to improve the crossing nine months before Martin's accident.

"Evidence is relevant if it tends to either prove a fact in controversy or render a matter in issue more or less probable, and each party may present evidence relevant to his theory of the case or inconsistent with an opponent's theory." (*Galowich v. Beech Aircraft Corp.* (1991), 209 Ill. App. 3d 128, 135.) "In determining relevancy, the trial court must consider the evidence in light of the factual issues raised by the pleadings." *Leggett v. Kumar* (1991), 212 Ill. App. 3d 255, 276.

We agree with plaintiff that the evidence of the ICC's inquiry was properly admitted to establish defendant's knowledge of safety problems at the crossing. The evidence went directly to the issue of whether defendant acted in reckless disregard or had the culpable state of mind required for a finding of willful and wanton misconduct.

Defendant further contends that the evidence is inadmissible by virtue of Federal statute. (23 U.S.C. §409 (1988).) However, as plaintiff properly recognizes, the Federal statute to which defendant refers was not enacted until 1987. There was no statutory prohibition against the use or admissibility of such material at the time the evidence was admitted, and there is no indication that the statute was intended to have a retroactive effect.

We find that the trial court did not abuse its discretion in admitting evidence of the ICC proceedings concerning the suggested upgrading of the Industrial Street crossing.

■ Fourthly, we decide whether the trial court improperly denied defendant's statistical evidence showing that crossings protected by gates and flashing lights were not safer than crossings protected by autoflags. Defendant maintains that the statistical evidence was necessary to rebut plaintiff's claim that the railroad crossing was inadequate.

"Evidence is relevant if it has a tendency to make a necessary fact more or less probable." (*Keller v. State Farm Insurance Co.* (1989), 180 Ill. App. 3d 539, 550.) "The determination whether evidence is relevant is within the discretion of the trial court and will not be disturbed absent an abuse of discretion." *Keller*, 180 Ill. App. 3d at 551.

The trial judge reviewed the offered statistical evidence and determined that it was irrelevant. After a review of the record, we cannot conclude that the trial court abused its discretion in refusing the evi-

dence. We therefore hold that the trial court did not err in denying defendant's statistical evidence on railroad crossings.

■■ Fifthly, defendant contends that the trial court erred in limiting its cross-examination of plaintiff's expert witness, Professor Michael. The trial court granted defendant leave to call Michael as its own witness but prohibited defendant from bringing out the fact that Michael had been previously employed by plaintiff. After a review of the record, we find that the trial court had sound reasons for limiting defendant's cross-examination. We therefore hold that the trial court did not err in limiting defendant's cross-examination of plaintiff's expert witness.

■■ Lastly, we decide whether the trial court erred in restricting defendant's evidence on damages. Specifically, defendant contends that it should have been permitted to show that plaintiff cohabited with another man on and off for a period of approximately three years before she married him. Defendant contends that plaintiff should not be entitled to recover for loss of consortium during the time she was living with another man.

It is well settled that recovery for loss of consortium terminates upon the remarriage of the surviving spouse. (*Carter v. Chicago & Illinois Midland Ry. Co.* (1985), 130 Ill. App. 3d 431; *Dotson v. Sears, Roebuck & Co.* (1987), 157 Ill. App. 3d 1036.) Defendant contends this principle should be extended to a surviving spouse who enters into a personal relationship with another person but who is not married to that person. We will not address, here, defendant's argument on this point. We hold that the trial court did not err in limiting defendant's evidence on damages.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed as to the willful and wanton misconduct count and award plaintiff $1,111,500, and judgment is vacated as to the negligence count.

Affirmed in part and vacated in part.

LINN and McMORROW, JJ., concur.