DEBBIE DANNER *et al.*, Plaintiffs-Appellees, v. NORFOLK AND WESTERN RAILWAY COMPANY *et al.*, Defendants-Appellants.

Fourth District   No. 4—94—0858

Argued March 21, 1995.—Opinion filed March 29, 1995.

Nicholas J. Neiers (argued), and Rhonda L. Richards, both of Samuels, Miller, Schroeder, Jackson & Sly, of Decatur, for appellants.

Michael B. Metnick and Kathryn Saltmarsh (argued), both of Metnick, Wise, Cherry & Frazier, of Springfield, for appellees.

JUSTICE COOK delivered the opinion of the court:

This appeal arises out of wrongful death actions brought by Debbie Danner and Gary Cundiff, individually and as administrators of the estate of Jamie Cundiff, and Peggy Stuber, individually and as administrator of the estate of Patrick Roy. On May 22, 1991, plaintiffs' decedents were passengers in a car driven by Brandon Woodcox. Woodcox was driving north on Albany Street in Grandview, Illinois, when he attempted to cross a railroad crossing. The car was struck by a westbound train, operated by defendant Norfolk and Western Railway Company (Norfolk and Western). Roy and Cundiff were killed by the collision, while Woodcox survived.

The Albany Street crossing was equipped with automatic flashing warning lights and signals, which were approved and installed pursuant to an Illinois Commerce Commission (ICC) order in 1971. Plaintiffs have not alleged that the warning lights were not operational, but that they were woefully inadequate. Plaintiff Stuber's complaint, which is substantially identical to the Danner and Cundiff complaint, alleges that Norfolk and Western was negligent, in that Norfolk and Western:

> "K. Failed to petition the [ICC] to authorize additional safety devices, including but not limited to, automatic crossing arms at the intersection, in light of conditions which have changed since the

[ICC] last ruled upon the adequacy of safety devices at the crossing in June 1971, including the following:

1. numerous accidents at the crossing, including a triple fatality on October 13, 1988;

2. a substantial increase in traffic flow at the crossing;

3. a substantial increase in the number of buildings and other obstructions which obscure a motorist's view of oncoming trains;

4. an increase in the speed of Defendant's trains as they pass through the crossing;

5. the inability of the [Illinois Commerce Commission ('Commission')] to regulate 10,000 miles of railroad tracks with a staff of 15 members ***."

In its answer, Norfolk and Western raised as a defense that it had no duty, pursuant to section 18c—7401(3) of the Illinois Commercial Transportation Law (Law) (625 ILCS 5/18c—7401(3) (West 1992)), to petition the ICC to upgrade the crossing protection. Section 18c—7401(3) of the Law provides in pertinent part:

"The [ICC] shall have power, upon its own motion, or upon complaint, and after having made proper investigation, to require the installation of adequate and appropriate luminous reflective warning signs, luminous flashing signals, crossing gates illuminated at night or other protective devices in order to promote and safeguard the health and safety of the public. Luminous flashing signal or crossing gate devices installed at grade crossings, which have been approved by the [ICC], *shall be deemed adequate and appropriate*. The [ICC] shall have authority to determine the number, type and location of such signs, signals, gates or other protective devices which, however, shall *conform as near as may be* with generally recognized national standards ***." (Emphasis added.) 625 ILCS 5/18c—7401(3) (West 1992).

Plaintiffs moved to strike this defense. The trial court granted plaintiffs' motions to strike, but found that the motions involved a question of law as to which there is a substantial ground for difference of opinion. Pursuant to Supreme Court Rule 308 (134 Ill. 2d R. 308), the trial court certified the following question on appeal:

"In light of the provision of 625 ILCS 5/18c—7401(3) that 'luminous flashing signal or crossing gate devices installed at grade crossings which have been approved by the Commission, shall be deemed adequate and appropriate', does a railroad have a common law or other duty to petition the [ICC] to authorize an upgrade of the protection by installation of additional safety devices at a crossing protected by flashing signals ordered and approved by the [ICC], when the railroad is aware or should be aware that additional safety devices are warranted?"

■ As a preliminary matter, we note that on a Supreme Court Rule 308 appeal, the appellate court's task is to answer the question certified by the trial court, rather than rule on the propriety of any underlying order. (See *Kerker v. Elbert* (1994), 261 Ill. App. 3d 924, 925, 634 N.E.2d 482, 483 (where this court held that *Faier v. Ambrose & Crushing, P.C.* (1993), 154 Ill. 2d 384, 609 N.E.2d 315, overruled *sub silentio* the more extensive Supreme Court Rule 308 review adopted in *Schoonover v. American Family Insurance Co.* (1991), 214 Ill. App. 3d 33, 40-41, 572 N.E.2d 1258, 1262-63).) The parties devoted a considerable portion of their briefs to discussions whether a "Completion Report," which was filed with the trial court by persons unknown, indicated that the ICC reviewed the adequacy of the Albany Street crossing protections in 1988 at the prompting of the City of Springfield. We find the matter irrelevant to our analysis of the question posed.

■ Under the common law, a railroad has a duty to provide adequate warning devices at its crossings. (*Martin v. Illinois Central Gulf R.R.* (1991), 237 Ill. App. 3d 910, 916, 606 N.E.2d 9, 13; *Bassett v. Burlington Northern R.R. Co.* (1985), 131 Ill. App. 3d 807, 811, 476 N.E.2d 31, 34.) "Where there is any evidence tending to show that an extra-hazardous condition existed at the crossing, it is for the jury to determine whether the railroad should have provided additional warnings." (*Bassett*, 131 Ill. App. 3d at 812, 476 N.E.2d at 34.) However, "[a]ll railroad crossings present a danger to motorists, and not every additional peril will impose a greater duty on the railroad." (*Bassett*, 131 Ill. App. 3d at 812, 476 N.E.2d at 34.) The jury must determine the degree of hazard and the adequacy of protection at a given crossing by considering such factors as physical obstructions to vision, the volume and speed of traffic, track arrangement, the angle of intersect, and the character of the surrounding neighborhood. *Bassett*, 131 Ill. App. 3d at 812, 476 N.E.2d at 34; *Baker v. Norfolk & Western Ry. Co.* (1970), 120 Ill. App. 2d 296, 304, 256 N.E.2d 887, 892.

■ Inaction by the ICC does not relieve a railroad of its common-law duty to provide adequate crossing protection. "[T]he fact that the [ICC] has not ordered a certain warning or signaling device at a crossing does not thereby relieve a railroad of negligence in not providing such a device." (*Hunter v. Chicago & North Western Transportation Co.* (1990), 200 Ill. App. 3d 458, 466, 558 N.E.2d 216, 221.) However, "[o]nce the Commission has investigated and ordered the installation of a particular kind of warning device, its decision is conclusive, and the railroad is precluded from installing any other signal." *Hunter*, 200 Ill. App. 3d at 465-66, 558 N.E.2d at 221; see also 92 Ill. Adm. Code § 1535.400(d) (1992-93).

■ Plaintiffs contend that the fact Norfolk and Western was precluded from installing a crossing gate without the approval of the ICC does not mean that the railroad was relieved of its common-law duty to seek such approval. Plaintiffs note that the ICC may act "upon complaint" (625 ILCS 5/18c—7401(3) (West 1992)), and they cite *Martin* in support of the proposition that a railroad has a duty to inform the ICC when upgraded protection is needed. In *Martin*, plaintiff brought a wrongful death action after plaintiff's decedent was killed at a private railroad crossing protected by a "wigwag signal." (*Martin*, 237 Ill. App. 3d at 914-15, 606 N.E.2d at 12.) Plaintiff presented testimony that had the crossing been designated public instead of private, the crossing would have met ICC criteria for the installation of flashing lights and a full crossing gate. (*Martin*, 237 Ill. App. 3d at 914-15, 606 N.E.2d at 12.) In upholding the verdict in favor of plaintiff, the appellate court wrote:

"Acknowledging that only the ICC was authorized to 'designate' the Industrial Street crossing as a public crossing, it appears that defendant failed to take reasonable action in requesting a change in the designation. The Railroad is responsible for maintaining the crossing and was in the best position to determine whether a change in the crossing's designation was warranted." *Martin*, 237 Ill. App. 3d at 917, 606 N.E.2d at 13-14.

In *Martin*, section 18c—7401(3) of the Law was inapplicable, because the ICC never approved the crossing protection in question. Although we agree that a railroad may have a duty to petition the ICC under some circumstances, we conclude that under section 18c—7401(3) of the Law there is no duty to petition the ICC for additional warning devices once warning lights or crossing gates have been approved by the ICC. The statute is clearly intended to foreclose litigation over the adequacy of approved warning devices. Plaintiffs cannot circumvent the purpose of the statute through the "back door." *Cf. Kesslering v. Chesapeake & Ohio Ry. Co.* (E.D. Mich. 1977), 437 F. Supp. 267, 269, and *Turner v. CSX Transportation, Inc.* (1993), 198 Mich. App. 254, 256-57, 497 N.W.2d 571, 573 (Michigan statute provided that a railroad could not be liable for failure to erect warning devices, absent an order by a government authority to install such a device and a failure by the railroad to comply with the order; courts held that it was therefore unfair to hold a railroad liable for failure to petition for permission to erect warning devices).

Nevertheless, plaintiffs contend that section 18c—7401(3) of the Law was never meant to abrogate the common law, because the overall purpose of the statute was to promote safety. Plaintiffs maintain the statute simply codifies Norfolk and Western's common-law duty

to "construct, maintain, and operate all of its equipment *** in such a manner as to pose no undue risk to its employees or the person or property of any member of the public." (625 ILCS 5/18c—7401(1) (West 1992).) Plaintiffs' reading of the statute would have the general statement of duty in section 18c—7401(1) of the Law prevail over the exception in 18c—7401(3) of the Law, rendering meaningless the language that approved warning devices "shall be deemed adequate and appropriate." This reading runs counter to accepted rules of statutory construction that "the specific [should] control over the general" (*People v. Singleton* (1984), 103 Ill. 2d 339, 345, 469 N.E.2d 200, 203), and that "statutes should be construed so that language is not rendered meaningless or superfluous" (*Singleton*, 103 Ill. 2d at 345, 469 N.E.2d at 203).

■ Plaintiffs next contend that section 18c—7401(3) of the Law was not meant to shield a railroad from liability when conditions change at a railroad crossing subsequent to ICC approval of the warning devices. We reject this argument because the statute itself makes no provision for changed conditions.

Norfolk and Western notes that the legislative debate indicates that the legislators considered the issue of changed conditions and rejected plaintiffs' position. (82d Ill. Gen. Assem., House Proceedings, April 22, 1982, at 120.) However, "[w]e note that legislators do not make laws by making speeches on the floor of the legislative chamber or by writing memos for committee meetings." (*Town of the City of Bloomington v. Bloomington Township* (1992), 233 Ill. App. 3d 724, 736, 599 N.E.2d 62, 70.) We find that the unqualified language of the statute manifests an intent to allow railroads to rely on ICC determinations, regardless of changed circumstances or the passage of time.

■ Finally, plaintiffs contend that ICC approval of the Albany Street crossing lights was ineffective, because (1) the ICC approved the lights in 1971, but the amendment stating approved lights are "deemed adequate and appropriate" (625 ILCS 18c—7401(3) (West 1992)) did not take effect until 1983, and (2) ICC determinations are supposed to "conform as near as may be with generally recognized national standards" (625 ILCS 18c—7401(3) (West 1992)), but the Albany Street lights were approved prior to the promulgation of Federal regulations pursuant to the Federal Railroad Safety Act of 1970 (45 U.S.C. § 421 *et seq.* (1988)).

Section 18c—7401(3) of the Law was not intended to " 'adjudicate any pending litigation.' " (*Hunter*, 200 Ill. App. 3d at 466, 558 N.E.2d at 221, quoting 82d Ill. Gen. Assem., House Proceedings, April 22, 1982, at 116.) However, we believe the statute was intended to give

preclusive effect to ICC decisions in future litigation, whether or not the decisions were made prior to the passage of the statute. The statute applies on its face to the past decisions of the ICC. Furthermore, we doubt the legislature intended to exclude all of the ICC's past work from the purview of the statute.

Under the statutory scheme, the ICC is responsible to act in accordance with national standards. In 1975, the United States Secretary of Transportation promulgated regulations which provide that automatic gates with flashing lights should be installed at a crossing when certain conditions are present. (23 C.F.R. § 646.214(b)(3) (1994).) Section 646.214(b)(3) of the Federal regulations applies only to projects involving Federal funds (see *CSX Transportation, Inc. v. Easterwood* (1993), 507 U.S. 658, 666-67, 123 L. Ed. 2d 387, 398, 113 S. Ct. 1732, 1738-39), and plaintiffs do not allege that Federal funds were used at the Albany Street crossing. Nevertheless, plaintiffs suggest that the ICC approval of the Albany Street crossing is invalid, because the approval does not conform with a subsequent (inapplicable) Federal regulation. We disagree. The purpose of section 18c—7401(3) of the Law would be defeated if the adequacy of crossing protection could be attacked every time Federal regulations change. The statute permits railroads to rely on the ICC's interpretation of national standards.

The answer to the certified question is no, there is no duty.

Certified question answered.

LUND and GREEN, JJ., concur.