NEREIDA ROMAN, Plaintiff-Appellee, v. THE CITY OF CHICAGO, Defendant-Appellant.

First District (2nd Division)   No. 84—1721

Opinion filed June 4, 1985.

James D. Montgomery, Corporation Counsel, of Chicago (Philip L. Bronstein, Maureen Kelly Ivory, and Julie Elena Brown, Assistant Corporation Counsel, of counsel), for appellant.

Robert M. Winter, of Chicago, for appellee.

JUSTICE PERLIN delivered the opinion of the court:

Defendant City of Chicago (city) appeals from a jury verdict awarding plaintiff Nereida Roman (Nereida) damages of $140,000 for injuries sustained as a result of city's negligence. On appeal, city contends that: (1) the trial court erred in directing a verdict for Nereida on the issue of city's negligence without at that time instruct-

ing the jury that proximate cause was a separate issue; (2) the trial court erred in tendering to the jury "in its entirety" Illinois Pattern Jury Instruction, Civil, No. 15.01 (2d ed. 1971) (hereinafter cited as IPI Civil 2d); (3) the damages awarded by the jury were based on speculative evidence and were excessive.

At trial, Nereida testified: On December 29, 1978, she was employed by Illinois Bell as a mail sorter earning a salary of $167.50 per week. At 6:30 a.m. she left for work, walking two blocks from her home to catch a bus at 56th and Halsted streets. Although she usually drove to work, Nereida had decided to take the bus because it had snowed the night before and there was snow on the ground. After waiting a short time for the bus at 56th Street, she walked on the east side of Halsted Street, north to 55th Street to wait for the bus there. Nereida walked in the area at the side of the sidewalk between the street lamp and the curb. She stepped into a hole. Her right leg went down into the hole, and her left leg was lying flat on the sidewalk. Her arms supported her on the sidewalk and kept her from falling further into the hole. Nereida felt "a bad pain" in her "left leg or ankle." She called out for help and a motorist stopped, helped her out of the hole and drove her home. Her family then drove her to Central Community Hospital in Chicago.

At the hospital, Nereida was examined, X-rayed and admitted. She saw only the doctor and "did not speak to any police officers." She remained in the hospital for seven or eight days. During that time her ankle was operated upon. A pin was put in her ankle and she was fitted with a "hard cast."

After leaving the hospital, Nereida remained at home until April 16, 1979, when she returned to work. While at home she was fitted by the doctor for a "walking cast." She returned to the doctor to have the cast removed. She was away from work for 15 weeks, and her hospital bill was $3,098. At the time of trial, her ankle still hurt on occasion and in humid or cold weather it would swell.

Mildred Roman, Nereida's sister, testified: She was 21 years old and lived with her mother and Nereida at the time of the accident. She took the "Halsted bus" to work each day. She stated that the sidewalks at the corner of 56th and Halsted were "in poor condition." She had noted four "coal holes" "without covers" north of 56th Street on the east side of Halsted on the day before Nereida's accident. She took pictures of these "coal holes" the day after the accident.

Dr. Allen Hirschtick, called by plaintiff, testified: He was an orthopedic surgeon whose practice at the time of trial "consisted of

consulting work." On April 13, 1983, he had examined Nereida and studied her medical records. According to her records, she had broken her ankle five years earlier. Upon examining her legs and ankles, he observed a "very noticeable atrophy of the muscles of the left calf." He X-rayed the left leg.

Dr. Hirschtick testified that there were two fractures and a partial dislocation of the ankle; that the bone is "partly out of play" and there is evidence of "early arthritis in the ankle joints" as a result of the "damage to the joint cartilage when the fracture took place." This arthritis is "a result of the injury" and is "permanent." Because it is a weight-bearing joint, daily activities "will cause a progressive degenerative change of the joint cartilage. So the arthritis will gradually get worse." She'll "eventually need surgery," but not "for perhaps 10 years." If done now, the surgery would be "fusion" of the ankle, in which the bones would be joined together. They are "working on an artificial ankle" which "might" be ready within 10 years. The fusion operation today would cost $15,000 including hospital and surgical fees. "Either" operation would require a minimum convalescence time of "6 months."

On cross-examination, Dr. Hirschtick conceded that he had not seen Nereida's X rays taken at the time of her accident, although he had read the "x-ray report" contained in her hospital records. He stated that from the X rays he had taken it was not possible to "tell when the injuries occurred, except to say that they're not recent." He had examined Nereida on only one occasion, and she had a "normal gait" and did not walk with a limp. He believed it was "more than possible" that Nereida would need future surgery, "depending on the daily stress that the ankle is subjected to."

City called Officer Mario Silva of the Chicago police department as its sole witness. He had prepared an accident report on December 29, 1978, at Central Community Hospital. His report indicated that he interviewed Nereida Roman on that date and that she told him "she slipped on the ice and hurt her ankle."

At the close of the evidence, Nereida's attorney moved for a directed verdict with regard to city's negligence in leaving an uncovered "coal hole" on the sidewalk on December 29, 1978. The motion was granted. After the jury returned, the trial court interrupted plaintiff's closing argument and told plaintiff's counsel:

> "I just want to interrupt you for a second. I forgot to do one thing. You want to inform the jury that the court has found, as a matter of law, that the city was negligent in allowing a coal hole to remain uncovered and did not barricade it or in

some other manner warn pedestrians that it was there."
Counsel then resumed closing argument.

Following deliberations the jury returned a verdict of $140,000 for Nereida.

■ City first contends that the trial court erred when, after it granted plaintiff's motion for a directed verdict as to city's negligence for failing to repair the open coal hole, the court failed to "instruct the jury on the distinction between a directed verdict on negligence and a finding of liability."

Initially, we observe that at trial city's attorney did not tender any instruction on this point, nor did he advise the court that city believed that such an instruction was appropriate. "It is a well-established rule that unless a party tenders an instruction he waives the right to appeal the failure to give the instruction. [Citations.]" (*Korpalski v. Lyman* (1983), 114 Ill. App. 3d 563, 567, 449 N.E.2d 211; see also *Auton v. Logan Landfill, Inc.* (1984), 105 Ill. 2d 537, 475 N.E.2d 817.) So also, city did not include this point in its post-trial motion, which is also recognized as a waiver of the right to raise the issue on appeal. (*Baldwin v. Huffman Towing Co.* (1977), 51 Ill. App. 3d 861, 366 N.E.2d 980.) Indeed, city has not advised this court of the instruction it believes should have been given in this case.

Even if city had not waived this issue, we would find its argument to be without merit. Because the court directed a verdict as to city's negligence, the court modified IPI Civil 2d No. 21.02 (the burden of proof instruction) omitting the language which required the jury to determine whether city was negligent. Such instruction has been upheld in similar situations. (See *Korpalski v. Lyman* (1983), 114 Ill. App. 3d 563, 449 N.E.2d 211; *Rapp v. Hiemenz* (1969), 107 Ill. App. 2d 382, 246 N.E.2d 77.) In view of the court's directed verdict on negligence only, the issues remaining for determination by the jury included proximate cause, comparative negligence and damages.

As a general rule, reversal will not be ordered on the basis of faulty jury instructions unless the jury is misled thereby, and the complaining party suffered prejudice. (*Bender v. Consolidated Mink Ranch, Inc.* (1982), 110 Ill. App. 3d 207, 441 N.E.2d 1315.) While we agree with city that it was important that the jury understand the legal import of the trial court's directed verdict, we believe that the instructions taken as a whole, as well as the arguments of counsel, properly advised the jurors of the issues to be resolved by them. Thus, we find no reversible error.

■ City next contends that the trial court erred in tendering to the jury IPI Civil 2d No. 15.01 on proximate cause "in its entirety, where there was no evidence of concurring causes." IPI Civil 2d No. 15.01 reads as follows:

"When I use the expression 'proximate cause', I mean [that] [a] [any] cause which, in natural or probable sequence, produced the injury complained of. [It need not be the only cause, nor the last or nearest cause. It is sufficient if it concurs with some other cause acting at the same time, which in combination with it, causes the injury.]"

In the trial court, the defendant objected to this form of the instruction and submitted a version which omitted the latter bracketed sentences. The trial court refused the version tendered by defendant and gave IPI Civil 2d No. 15.01 in its entirety, as tendered by plaintiff.

Plaintiff's theory of this case was that she stepped into the coal hole, that city was negligent in failing to repair the coal hole, and therefore that city was liable for her damages. It was city's theory of the case that (1) plaintiff's own negligence caused her injury and/ or that (2) plaintiff slipped on ice and snow (for which the city was not liable, and the jury was so instructed) and that, in either event, the city was not liable for her injuries. The factors determining whether this instruction should be given in its entirety was considered by the court in *Willson v. Pepich* (1983), 119 Ill. App. 3d 552, 456 N.E.2d 882.

"We agree that the principal reason for not permitting the inclusion of the bracketed material in IPI Civil No. 15.01 is no longer present under the doctrine of comparative negligence. So long as the doctrine of contributory negligence was a viable doctrine in this State, the negligence of the defendant had to be the sole cause of the injury to the plaintiff when the only other possible contributing cause was the conduct of plaintiff herself, and it was for this reason that the bracketed material was held to be improper in such cases. (See, *Budovic v. Eschbach* (1953), 349 Ill. App. 163, 167.) On the other hand, it is equally clear that the bracketed material containing the last two sentences was included in IPI Civil No. 15.01 to address the situations where there was evidence that something or acts of someone other than the negligence of the parties was also a possible proximate cause of the injury. (See *Perry v. Chicago & North Western Transportation Co.* (1977), 54 Ill. App. 3d 82, 91.)" 119 Ill. App. 3d 552, 556-57.

We believe the instruction was, in this case, properly given in its entirety. As the trial court noted at the instruction conference, there was evidence that something other than the negligence of the parties (here natural accumulations of ice and snow) was a possible proximate cause of the injuries. Since the jury was also instructed that the city was not liable for the effect of weather conditions on public ways, we believe it was not error for the jury to be given IPI Civil 2d No. 15.01 in its entirety.

City's final argument is that the judgment must be reversed because the damages awarded were "excessive" and based upon the "speculative" testimony of plaintiff's consulting doctor.

City contends that the doctor's testimony regarding the "progressive arthritis" suffered by plaintiff was speculative because he had only examined plaintiff on one occasion. City posits that he therefore could not testify to the deteriorating nature of plaintiff's ankle injury. We do not agree. City has cited us to no cases supporting its position, nor have we found any. We think that a doctor may testify to the progressive nature of an injury based, as here, on his examination of plaintiff; her X rays and her medical history. If a defendant believes that this is a weak basis for testimony as to future medical problems, such contention is properly made to the jury. See *Pomrenke v. Betzelberger* (1963), 41 Ill. App. 2d 307, 190 N.E.2d 522.

City next argues that the doctor's testimony was speculative because he discussed, *inter alia*, the possibility that by the time the plaintiff's future surgery became necessary science may have completed development of an artificial ankle which plaintiff could receive. City argues that such testimony is clearly speculative, since the artificial ankle has not yet been developed. If that was the sole testimony presented by this witness, city's position would be appreciably stronger. However, the doctor's testimony was much more inclusive. He testified, without contradiction, that plaintiff's injury had caused progressive arthritis in the ankle and that such condition would become worse. He stated that she "will" need surgery in the future, probably within the next "ten years." He stated that if the operation were to occur today, a "fusion" of the ankle would be the operation "of choice." While this procedure would successfully reduce her pain, it would also render the joint immobile. The doctor further noted that an artificial ankle is being developed, and if it were perfected by the time that plaintiff's condition required further surgery, implant of the artificial ankle might then be the appropriate operation. Dr. Hirschtick testified that the fusion operation would

cost $15,000 and that either the fusion or artificial ankle surgery would require a minimum six-month convalescence. City did not object to this testimony, nor did it offer medical evidence to establish a contrary position, apparently relying solely on its cross-examination of plaintiff's expert.

"The testimony of a medical expert need not be based on absolute certainty, but only a reasonable degree of medical and scientific certainty. [Citations.]" (*Frankenthal v. Grand Trunk Western R.R. Co.* (1983), 120 Ill. App. 3d 409, 419, 458 N.E.2d 530.) While the witness did note, *inter alia,* possible future, and thus speculative, surgical options, we do not find that his testimony as to plaintiff's progressive arthritis and the resulting need for future surgery was thereby made impermissibly speculative. See *Cummings v. Chicago Transit Authority* (1980), 86 Ill. App. 3d 914, 408 N.E.2d 737.

■■ City contends that the jury award was "excessive." We do not agree. Because the determination of damages is particularly within the province of the jury, its decision will not be disturbed on appeal unless it is clearly the result of passion or prejudice; an award is considered excessive if it is outside the necessarily flexible limits of fair and reasonable compensation or so large as to shock the conscience of the court. *Simmons v. Union Electric Co.* (1984), 121 Ill. App. 3d 743, 460 N.E.2d 28.

The award here appears to be within the realm of reasonable compensation in light of the evidence presented with regard to plaintiff's actual damages and her future pain and suffering, medical costs and lost wages. See, *e.g., Tracy v. Village of Lombard* (1983), 116 Ill. App. 3d 563, 578, 451 N.E.2d 992: "Other cases involving injuries to a hip, leg, or foot have held awards in excess of $125,000 not to be excessive. [Citations.]"

For the reasons herein stated, the judgment of the circuit court is affirmed.

Judgment affirmed.

STAMOS, P.J., and HARTMAN, J., concur.