611 N.E.2d 1113 (1993)
243 Ill. App.3d 195
183 Ill.Dec. 465
Dawn Marie DABROS, a minor by her mother and next friend, Cheryl DABROS, Plaintiff-Appellant,
v.
S.Y. WANG, M.D., Defendant-Appellee.
No. 1-91-1543.
Appellate Court of Illinois, First District, Second Division.
February 16, 1993.
*1114 Drumke & Patterson, Ltd., Chicago (Robert B. Patterson, Danielle M. Jaeschke, of counsel), Madigan & Getzendanner (Vincent J. Getzendanner, Jr., of counsel), for plaintiff-appellant.
Clausen Miller Gorman Caffrey & Witous, P.C., Chicago (James T. Ferrini, Imelda Terrazino, of counsel), for defendant-appellee.
Justice SCARIANO delivered the opinion of the court:
Plaintiff Dawn Marie Dabros, by her mother, Cheryl Dabros (Cheryl), brought this medical malpractice action against defendant S.Y. Wang, M.D., for allegedly misdiagnosing and negligently treating a condition called capillary hemangioma on her left leg. A jury found for defendant; plaintiff appeals from that verdict.

Plaintiffs Surgery
Plaintiff was born on April 16, 1974, and a few days later, Cheryl noticed what she characterized as a small bruise on the side of the infant's left leg near her knee. She testified that it looked "like someone had hit her just a little" and that there was "no size" to the mark.
When Cheryl took plaintiff to her pediatrician, Dr. Cuilini, a few weeks later, the mark had broadened, growing to about the size of a fifty cent piece, and had turned red. Within the next few months, the mark started to rise; it became discolored, and continued to grow; nevertheless, when Dr. Cuilini saw plaintiff again about two months after her birth, he told Cheryl that the mark was fine and that she should just watch it.
Dr. Cuilini examined plaintiff once again on July 25, 1974, and Cheryl testified that at that time the mark looked like "a little round ball like a little apple," was somewhat raised, appeared reddish in color, and contained some white or gray areas; it also had a break or ulceration in it about an inch in size which was not bleeding, but was slightly discharging pus. Dr. Cuilini decided to refer Cheryl and plaintiff to defendant for further treatment.
Cheryl took plaintiff to see defendant that same evening and informed him of the history of the mark and its persistent growth. She testified that defendant recommended immediate surgery to remove the growth from plaintiff's leg in order to avoid the possibility of amputation because the sore was ulcerating, which could indicate the presence of cancer. Defendant *1115 informed Cheryl that some scarring might result from the surgery.
Defendant performed surgery on plaintiff the next day. He excised the entire mark from her leg and placed skin grafted from her upper left thigh over the open surgical area. He bandaged the site with a stent dressing to compress the graft against the wound to immobilize it, and then he discharged plaintiff, telling Cheryl not to touch the dressing.
During the first post-operative visit on July 31, 1974, defendant told Cheryl that the graft seemed to be "taking" and that the excision was healing well. However, it subsequently became infected, and defendant was forced to perform a second surgery. He grafted additional skin from plaintiff's right thigh and placed it on both the original incision and the first graft donor site. Plaintiff's right thigh healed well, leaving little residual discoloration; her left leg, however, was extensively scarred from her knee to her upper thigh. Plaintiff testified that although the scar causes her no pain or any other functional problems, she is extremely embarrassed because of its appearance.

The Complaint
On August 5, 1985, Cheryl filed a complaint on plaintiff's behalf against defendant which alleged that his diagnosis and treatment of a small birthmark or hemangioma on plaintiff's left knee was negligent. Defendant answered the complaint, admitting that plaintiff had come under his care for hemangioma on her left leg, but denying all allegations of negligence on his part.

The Condition
Expert testimony elicited by both parties at trial established that the growth on plaintiff's left leg was a capillary hemangioma which they defined as an overgrowth of capillaries (small blood vessels) that occurs on the skin. It appears as a small dot at birth, but starts to grow soon thereafter and eventually turns into a large red mark resembling a strawberry which often bleeds or ulcerates slightly. It usually goes through a growth stage for about one year and then turns white, becomes static, and ultimately degenerates, leaving a small scar at the place of ulceration. Capillary hemangiomas are present in approximately one of every eight infants, and about eighty-five to ninety percent of them resolve themselves within eight to ten years.

Expert Testimony at Trial
The first medical expert witness presented by the plaintiff, offered via a videotaped deposition, was that of Elvin Zook, M.D. He stated that from looking at a picture of plaintiff's leg taken immediately before her surgery, the red blotch unquestionably was a capillary hemangioma. Dr. Zook testified that the standard of care in 1974 would have been to keep the wound clean, monitor it carefully, and simply wait for it to resolve itself; he did state, however, that surgery might be appropriate in a few rare instances, e.g., where the entire wound was ulcerating or bleeding, or where the hemangioma could damage the knee joint. In this case, however, Dr. Zook opined that it was unnecessary to excise the hemangioma since it was not affecting the knee joint nor was it bleeding; further, surgery was especially inappropriate in this instance because it was an open wound which increased the likelihood of infection.
Dr. Zook also stated that while he did not think that defendant was negligent in surgically removing the wound or in grafting the skin on plaintiff's left leg, his decision to excise the hemangioma breached the applicable standard of care because if defendant had simply waited for it to resolve itself, the size of the resulting scar would have been somewhere between a dime and a fifty cent piece. Finally, Dr. Zook stated that the appearance of plaintiff's scar could be improved by approximately 75% by performing further surgical techniques.
Plaintiff next called defendant as an adverse witness, who testified that he did not know for sure what the wound was when he first examined plaintiff, and although he was familiar with capillary hemangiomas, *1116 this blemish was atypical.[1] Defendant admitted that normally, most capillary hemangiomas resolve themselves without extensive treatment; however, he was convinced that if the mark was a hemangioma, then it was not an ordinary one because it had grown so rapidly[2] and was ulcerating. Defendant testified that he normally does not surgically remove a capillary hemangioma unless it poses the potential for more serious injury, and that he also knew that the surgery he performed would cause a scar and, as with any surgical procedure, included the risk of infection. Nonetheless, he still recommended excising the wound for the following reasons: (1) since the wound contained so many capillaries (blood vessels), If plaintiff had scraped the wound, then it would have started to bleed, and such bleeding may have been unstoppable, thus necessitating amputation; (2) it was possible that the entire wound might have begun to ulcerate if it had not been surgically removed; (3) the wound could have engulfed plaintiff's entire leg, perhaps resulting in more serious damage to it; and (4) there was a chance the wound could have been cancerous. Finally, defendant stated that considering the fact that two surgeries were necessary due to the infection after the first one, plaintiff's scar was better than he expected it to be.
Defendant called as its only expert witness Martin Sullivan, M.D. He concurred with Dr. Zook in that, ordinarily, the standard of care for treating a capillary hemangioma is "watchful neglect." However, he testified that surgery is necessary in some unusual cases, especially when the wound is located in certain areas, such as the eyelids, the anus, or in the "crease" behind one's elbow or knee. In Dr. Sullivan's opinion, defendant's excision of plaintiff's hemangioma was within the standard of care because: (1) from the pictures available, the wound appeared to be in the crease behind plaintiff's knee joint; (2) if the first graft had "taken," the resulting scar would have been comparable to one that would have resulted had the wound simply been allowed to heal; and (3) the hemangioma was unusual in that it was extremely large. Dr. Sullivan stated that had he been the treating physician, he might have waited a few days before removing the hemangioma to see whether it was healing; however, he could not, in retrospect, say that defendant acted negligently in opting to immediately excise the wound to prevent potentially more severe symptoms.
After hearing all of the evidence, the jury found for defendant, and plaintiff appeals from that verdict.

I.
Plaintiff first asserts that the trial court erred by refusing to set aside the jury's verdict and enter a judgment non obstante veredicto, or in the alternative, grant a new trial. It is well settled that a trial court should enter a j.n.o.v. only if all of the evidence, viewed in a light most favorable to the non-moving party, so overwhelmingly favors the moving party that no contrary verdict based on the evidence could ever stand (Pedrick v. Peoria & Eastern R.R. Co. (1967), 37 Ill.2d 494, 510, 229 N.E.2d 504, 513-14); and that standard also governs a reviewing court's consideration of a trial court's denial of a j.n.o.v. (Knight v. Haydary (1992), 223 Ill.App.3d 564, 569, 165 Ill.Dec. 847, 851, 585 N.E.2d 243, 247, appeal denied, (1992), 145 Ill.2d 635, 173 Ill.Dec. 5, 596 N.E.2d 629.)
Our supreme court also emphasized in Pedrick that a different standard is applied to a motion for a new trial. (Pedrick, 37 Ill.2d at 509-10, 229 N.E.2d at 513; accord Mizowek v. De Franco (1976), 64 Ill.2d 303, 310, 1 Ill.Dec. 32, 35-36, 356 N.E.2d 32, 35-36. A court should set aside a jury verdict and grant a new trial only when the verdict is contrary to the manifest weight of the evidence. (Pedrick, 37 Ill.2d at 509, 229 N.E.2d at 513; Mizowek, 64 Ill.2d at 310, 1 Ill.Dec. at 36, 356 N.E.2d at 36; Knight, *1117 223 Ill.App.3d at 573, 165 Ill.Dec. at 854, 585 N.E.2d at 250.) A verdict will be deemed to be against the manifest weight of the evidence only if it is palpably erroneous and wholly unwarranted, clearly the result of passion or prejudice, or appears to be arbitrary, unreasonable, and not based on the evidence. Loitz v. Remington Arms Co. (1989), 177 Ill.App.3d-1034, 1050, 1051, 127 Ill.Dec. 262, 272, 532 N.E.2d 1091, 1101, rev'd on other grounds, (1990), 138 Ill.2d 404, 150 Ill.Dec. 510, 563 N.E.2d 397.
Plaintiff does not quarrel with the well-established principle that where conflicting expert testimony is introduced at trial, it is the province of the jury as the trier of fact to resolve the conflict. (Walski v. Tiesenga (1978), 72 Ill.2d 249, 260, 21 Ill.Dec. 201, 206, 381 N.E.2d 279, 284; Topp v. Logan (1990), 197 Ill.App.3d 285, 298-99, 143 Ill.Dec. 519, 528, 554 N.E.2d 454, 463; Piano v. Davison (1987), 157 Ill.App.3d 649, 666, 110 Ill.Dec. 35, 47, 510 N.E.2d 1066, 1078, appeal denied, (1988), 119 Ill.2d 574, 397, 522 N.E.2d 1256.) Although this court is required to scrutinize the evidence in a medical malpractice action when reviewing a denial of a motion for a j.n.o.v. or a new trial (Schuchman v. Stackable (1990), 198 Ill. App.3d 209, 222, 144 Ill.Dec. 493, 501, 555 N.E.2d 1012, 1020, appeal denied, (1990), 133 Ill.2d 573, 149 Ill.Dec. 338, 561 N.E.2d 708; Piano, 157 Ill.App.3d at 665, 110 Ill. Dec. at 47, 510 N.E.2d at 1078), we will not sit as a second jury and reweigh the evidence or reevaluate the credibility of the witnesses. Evans v. Sisters of the Third Order of St. Francis (1987), 154 Ill.App.3d 137, 140, 107 Ill.Dec. 74, 76, 506 N.E.2d 965, 967, appeal denied, (1987), 116 Ill.2d 553, 113 Ill.Dec. 297, 515 N.E.2d 106; Anderson v. Beers (1979), 74 Ill.App.3d 619, 623, 30 Ill.Dec. 516, 520, 393 N.E.2d 552, 556.
The case sub judice presents a classic "battle of experts" situation. (See Martin v. Zuchker (1985), 133 Ill.App.3d 982, 991, 88 Ill.Dec. 980, 986, 479 N.E.2d 1000, 1006.) The jury first listened to plaintiff's medical expert (Dr. Zook) state why he felt that defendant's decision to excise plaintiff's mark constituted a breach of the standard of care as it existed in 1974. It then heard defendant testify as to why he decided to surgically remove plaintiff's hemangioma. Finally, the jury heard defendant's expert (Dr. Sullivan) testify that he did not think that defendant's conduct amounted to a breach of the applicable standard of care. The jury resolved this conflict in favor of the defendant, and we encounter no discernible reason in the record that requires us to disturb that resolution.
Plaintiff nevertheless urges us to set aside the jury verdict for the following reasons: (1) Dr. Sullivan's testimony was speculative and thus cannot be used to support the jury's verdict; (2) there were no facts to support Dr. Sullivan's "crease" theory; (3) Dr. Sullivan's "crease" testimony was invalid because he made no mention of it during his deposition; and (4) the jury's verdict was based on passion and sympathy for defendant. We find all of these arguments to be meritless.
First, the fact that Dr. Sullivan could not predict with mathematical certainty what would have happened had defendant not removed the hemangioma does not render his testimony unduly speculative. While it is clear that an expert witness may not guess or state an opinion which is based merely on speculation or conjecture (Loitz, 177 Ill.App.3d at 1051, 127 Ill.Dec. at 272, 532 N.E.2d at 1101; Hunter v. Chicago & North Western Transportation Co. (1990), 200 Ill.App.3d 458, 473, 146 Ill.Dec. 253, 263, 558 N.E.2d 216, 226), the testimony of a medical expert need not be based on absolute certainty, but only a reasonable degree of medical and scientific definiteness. (Hunter, 200 Ill.App.3d at 473, 146 Ill.Dec. at 263, 558 N.E.2d at 226; Roman v. City of Chicago (1985), 134 Ill.App.3d 14, 21, 89 Ill.Dec. 58, 62, 479 N.E.2d 1064, 1068.) In Redmon v. Sooter (1971), 1 Ill. App.3d 406, 274 N.E.2d 200, the court explained that:
"When a doctor is asked to base his opinion on a reasonable degree of medical certainty, the certainty referred to is not that the same condition in the future *1118 is certain to exist or not to exist; rather the reasonable certainty refers to the general consensus of recognizing medical thought and opinion concerning the probabilities of conditions in the future based on present condition." Redmon, 1 Ill. App.3d at 412, 274 N.E.2d at 204.
In this case, it is plain that Dr. Sullivan's testimony was not excessively speculative. He stated that in his judgment, based on the situation confronting defendant at the time, it was not unreasonable for him to opt to excise the hemangioma on plaintiff's leg before further potentially more serious complications resulted. It was not necessary for him to give sworn guarantees that those complications would not occur; nor was it even necessary that he state that he would have excised the wound were he the treating physician at the time. Accordingly, it was proper for the court to allow the jury to rely on Dr. Sullivan's opinion that defendant did not breach the relevant standard of care.
Plaintiff's argument that no evidence in the record supports Dr. Sullivan's opinion that defendant properly excised the hemangioma because it invaded the flex point ("crease") behind plaintiff's knee is also without warrant. The photo introduced as evidence by the plaintiff illustrates that the wound was at least near, if not already covering, the flex point behind her knee. The jury viewed this photograph and evidently rejected plaintiff's assertion during closing argument that the wound did not impede the crease behind plaintiff's knee. Accordingly, Dr. Sullivan's opinion that surgery could have been indicated because of possible damage to the knee joint was supported by the evidence.
Plaintiff's assertion that Dr. Sullivan's "crease" opinion must be disregarded because he made no mention of it in his deposition is groundless as well. "The fact that a witness * * * has made out-of-court statements inconsistent with his sworn testimony does not per se destroy the probative value of his testimony, and it ordinarily remains for the trier of fact to determine where the truth lies." (Converters Inc. v. Industrial Commission (1975), 61 Ill.2d 218, 224, 334 N.E.2d 155, 159; see Golden v. Big Bear Foods, Inc. (1968), 102 Ill. App.2d 237, 248, 243 N.E.2d 730, 736.) In this instance, it was for the jury to determine Dr. Sullivan's credibility and the persuasiveness of his "crease" opinion; it is not our province to reevaluate his trustworthiness.
Finally, plaintiff's contention that the jury's verdict was based on passion and sympathy for defendant's age and lack of mastery of the English language is baseless. Absent a specific showing to the contrary, we presume that the individual members of the jury faithfully performed their duties of fairness and impartiality to the best of their ability. (See Maddox v. Smith (1966), 67 Ill.App.2d 374, 383, 214 N.E.2d 5, 9.) We find no indication whatsoever in the record that the jury's verdict was based on anything but the evidence before it.
For all of these reasons, we affirm the trial court's denial of plaintiff's motions for a j.n.o.v. and a new trial.

II.
Plaintiff additionally argues that the trial court erred in refusing to instruct the jury that it may not deny or limit plaintiff's right to damages because the injury resulted from an aggravation of her pre-existing condition. Defendant responds on the following grounds: (1) that the defendant waived the issue by not objecting to the court's refusal to accept the tendered instruction relating to aggravation of a pre-existing condition; (2) that the court properly refused to give that instruction to the jury; and (3) that even if the court did err in doing so, that error was harmless.
Defendant's waiver argument is without foundation. After the court refused plaintiff's proposed instruction on aggravation of a pre-existing injury, the following discussion took place at the jury instruction conference:
[Plaintiff's counsel:] "Can I just state for theyou did not want to entertain *1119 argument on that issues instruction, right?"
[Court:] "Yeah. It's not reallyI think it's officially covered when I give it over a party's objection or refuse it. It's telling you that's thatthe Court doesn't agree with you."
[Plaintiff's counsel:] "Okay."
[The Court:] "If there's any error, the Judgeif it goes against you or the other party, you'll raise it in your post-trial motion."
Generally, a party waives any objection to jury instructions when it does not object to them at the jury instruction conference. (See Saunders v. Schultz (1960), 20 Ill.2d 301, 314, 170 N.E.2d 163, 170.) In this case, however, it is clear from the above colloquy that plaintiff's counsel simply followed the trial court's specific request when it did not make a formal objection to the court's rejection of its proposed jury instruction until the post-trial stage. The trial court should not have refused to hear argument on the issue as to which of the tendered instructions he chose to give to the jury; the issue is not "officially covered" simply because the court decides, without argument from opposing counsel, that certain instructions will or will not be given. The court should have, at the very least, allowed plaintiff's attorney to go on record with the reasons for his objection to the court's refusal to instruct the jury on the law of aggravation of a pre-existing injury, to say nothing about giving counsel an opportunity to argue otherwise. In any event, we cannot say that plaintiff waived this issue on appeal, since he merely followed the court's direction in not substantively raising the issue until he included it in his post-trial motion.
We also hold that the trial court erred in failing to instruct the jury that it may not limit or deny plaintiff damages if it found defendant liable because the injury resulted from defendant's aggravation of plaintiff's pre-existing condition. A trial court's determination as to the instructions to be given to the jury will not be disturbed absent an abuse of discretion. (Villa v. Crown Cork & Seal Co. (1990), 202 Ill.App.3d 1082, 1088, 148 Ill.Dec. 372, 376, 560 N.E.2d 969, 973.) The test for determining whether the trial court abused its discretion in instructing the jury is whether, considered as a whole, the instructions are clear enough so as to not mislead the jury and whether they fairly and accurately state the applicable law. Saunders, 20 Ill.2d at 314, 170 N.E.2d at 170; Wille v. Navistar International Transportation Corp. (1991), 222 Ill. App.3d 833, 839, 165 Ill.Dec. 246, 250, 584 N.E.2d 425, 429, appeal denied, (1992), 144 Ill.2d 644, 169 Ill.Dec. 152, 591 N.E.2d 32.
In Balestri v. Terminal Freight Cooperative (1979), 76 Ill.2d 451, 31 Ill.Dec. 189, 394 N.E.2d 391, our supreme court held that the trial court erred in failing to give the jury a non-pattern instruction which informed it that damages should not be reduced because the injury was due, in part, to an aggravation of a pre-existing condition. The court reasoned that since a tortfeasor is liable for all of the injuries he causes, even those that aggravate a pre-existing condition, the facts of that case warranted a damage instruction which accurately reflected the fact that the plaintiff may be compensated for such injuries once liability has been found. (Balestri, 76 Ill.2d at 455-56, 31 Ill.Dec. at 191, 394 N.E.2d at 393.) Accordingly, the court affirmed the appellate court's reversal of the trial court and remanded the cause on the question of damages only. Balestri, 76 Ill.2d at 456, 31 Ill.Dec. at 191, 394 N.E.2d at 393.
Subsequent opinions of this court have held that where the facts of the case so warrant, a damage instruction accurately stating the law regarding aggravation of a pre-existing injury must be given to the jury. (Tracy v. Village of Lombard (1983), 116 Ill.App.3d 563, 576, 71 Ill.Dec. 838, 847, 451 N.E.2d 992, 1001; accord Gruidl v. Schell (1988), 166 Ill.App.3d 276, 282, 116 Ill.Dec. 748, 752-53, 519 N.E.2d 963, 967-68.) Furthermore, in response to Balestri, the following Illinois Pattern Instruction was promulgated:
"If you decide for the plaintiff on the question of liability, you may not deny or *1120 limit the plaintiff's right to damages resulting from this occurrence because any injury resulted from an aggravation of a pre-existing condition." (Illinois Pattern Jury Instructions, Civil, No. 30.21 (3d ed. 1990) (hereinafter IPI Civil 3d).)
We recently held that this instruction accurately states the law on aggravation of a pre-existing condition in Illinois. Grimming v. Alton & Southern Ry. Co. (1990), 204 Ill.App.3d 961, 983, 150 Ill.Dec. 283, 296-97, 562 N.E.2d 1086, 1099-1100, appeal denied, (1991), 136 Ill.2d 544, 153 Ill. Dec. 373, 567 N.E.2d 331.
In the case at bar, defendant does not seriously argue, nor could he, that the court was correct in refusing to instruct the jury on the law of aggravation of a pre-existing condition. Plaintiff's theory of the case was that by excising the hemangioma when he should not have, defendant aggravated her already present injury; not that he caused in any way the hemangioma itself. Accordingly, we find that the trial court erred by failing to instruct the jury on the law regarding aggravation of a pre-existing condition.
Defendant nevertheless contends that since aggravation of a pre-existing condition relates only to the amount of damages awarded to a successful plaintiff, the court's error here was harmless because the jury found for defendant on the question of liability. Plaintiff responds vigorously that because the court failed to instruct the jury on the law of aggravation of a preexisting condition, it may have confused the jury on the question of liability, thus fatally tainting its verdict.
As a general rule, a judgment will not be reversed where the jury instructions are faulty unless they mislead the jury and the complaining party suffered prejudice. (Villa, 202 Ill.App.3d at 1088, 148 Ill.Dec. at 376, 560 N.E.2d at 973; Roman, 134 Ill.App.3d at 18, 89 Ill.Dec. at 61, 479 N.E.2d at 1067.) Moreover, "[i]t is well established that where a defendant is found not liable, alleged errors pertaining solely to damages do not afford grounds for reversal." Schuchman, 198 Ill.App.3d at 231, 144 Ill.Dec. at 510, 555 N.E.2d at 1029; see Mackey v. Daddio (1985), 139 Ill.App.3d 604, 608, 94 Ill.Dec. 290, 293, 487 N.E.2d 1167, 1170.
Defendant readily admits that the instruction in question, as well as all of the reported cases in Illinois, regard the issue of aggravation of a pre-existing condition solely as a measure of damages. In fact, the relevant pattern instruction expressly states that it is only applicable "if you decide for the plaintiff on the question of liability." (IPI Civil 3d No. 30.21.) Plaintiff also concedes that the court properly instructed the jury that "if you decide for the defendant on the question of liability, you will have no occasion to consider the question of damages." See Illinois Pattern Jury Instructions, Civil No. 36.01 (2d ed. 1981).
Nevertheless, plaintiff urges that under the facts of this case, it was possible for the jury to have been confused on the question of liability. She argues that because the court instructed the jury that in order to find defendant liable, it had to find that "the plaintiff was injured" and that "the negligence of the defendant was a proximate cause of the injury to the plaintiff" (emphasis added); therefore, the jury, without the aggravation of a pre-existing condition instruction, could have believed that the "injury" to which the court referred was plaintiff's original condition. From there, she reasons that it was obvious that defendant did not cause that injury, but instead aggravated it; therefore, the jury may have thought that a verdict for defendant was proper even though he breached his duty of care and proximately caused injury to plaintiff by worsening her condition. In essence, plaintiff asks us to recognize for the first time that the aggravation of a pre-existing condition instruction addresses not only the measure of damages once liability is found, but also the actual finding of liability as well.
We find plaintiff's argument to be without merit. Regarding the question of defendant's liability, the court instructed the jury that:
"Plaintiff claims that she was injured and sustained damage, and that the defendant *1121 was negligent in one or more of the following respects:
By failing to perform adequate examination of the hemangioma on the plaintiff's left leg;
By failing to correctly diagnose the hemangioma on the plaintiff's left leg;
By recommending and performing surgical excision of the hemangioma on the plaintiff's left leg when the surgery was not indicated by the then existing condition of the plaintiff.
The plaintiff further claims that one or more of the foregoing was a proximate cause of her injuries."
It is patent from these instructions that the jury was not required to find that defendant caused the original hemangioma; instead, had the jury found that defendant had breached the applicable standard of care, the "injury" it would have considered was not the harm caused by the original condition (the hemangioma), but instead the injury caused by defendant's improper diagnosis and treatment of the already existing condition. We reiterate that it was nowhere suggested at trial that defendant caused the hemangioma to appear on plaintiff's leg; therefore, it was clear that it was not possible for the jury to have been confused as to what type of injury it was required to find in order to hold defendant liable for negligently treating plaintiff. Accordingly, the court's instruction accurately reflected the law on the question of liability.
In sum, we find that although the trial court erred in refusing to give the jury a damage instruction on the law of aggravation of a pre-existing injury, that error was harmless for the reason that the jury found for the defendant on the question of liability.
For all of the foregoing reasons, we affirm the judgment of the trial court.
Affirmed.
McCORMICK, P.J., and DiVITO, J., concur.
NOTES
[1] The medical charts indicate that the condition was labeled as "cavernous hemangioma," a much more serious condition; however, defendant testified that he did not make that entry.
[2] At the time of its removal, the growth was seven by four centimeters.