ANTHONY ABBINANTE *et al.*, Plaintiffs, v. KEVIN O'CONNELL, Defendant-Appellant (Vanessa Abbinante, Plaintiff-Appellee).

Third District    No. 3—95—0450

Opinion filed February 21, 1996.

James W. Fessler (argued) and Michael Resis, both of Querrey & Harrow, Ltd., of Chicago, and Christopher Johnston, of Querrey & Harrow, Ltd., of Joliet, for appellant.

John C. Pendergast (argued) and Carol A. Collins, both of Fishman, Fishman & Saltzberg, of Chicago, for appellee.

PRESIDING JUSTICE BRESLIN delivered the opinion of the court:

The defendant, Kevin O'Connell, appeals from the judgment entered on a jury verdict in favor of the plaintiff, Vanessa Abbinante, in a personal injury suit. The defendant claims that the trial court erred in preventing his expert witness from testifying about axial loading as it related to the plaintiff's injuries. He also claims that the

trial court abused its discretion by using a non-Illinois Pattern Jury Instruction (IPI) that substituted loss of a normal life as an element of damages for the IPI disability instruction. We hold that the defendant's failure to make an offer of proof regarding his expert's axial loading testimony resulted in the waiver of that issue. We also hold that the trial court did not abuse its discretion by using the non-IPI loss-of-normal-life jury instruction. We therefore affirm the trial court's ruling on both issues.

This case arises out of an accident in which an automobile driven by Kevin O'Connell struck 17-year-old Vanessa Abbinante while she was walking on a sidewalk. In his answer to Vanessa's complaint, Kevin admitted liability but contested the amount of damages. The court held a jury trial on the issue of damages.

In addition to her other injuries, Vanessa demonstrated her abnormal spinal curvature to the jury, both in person and by pictures. She testified that she participated in volleyball, basketball, softball and jogging prior to her injuries. As a result of her injuries, however, she could no longer run or participate in any exercise that involves swinging her arms. Vanessa also experienced difficulty sitting and sleeping. She stated that she had to quit her job as a waitress because she could not carry the trays or stand on her feet for long periods of time. Further, she had to reduce her hours as a hairdresser because she had difficulty holding up her arms.

Vanessa's expert witness testified at trial that although Vanessa's spine had compensated for her back injuries, which has allowed her to stand erectly, she will suffer further complications and pain in the future. According to this witness, compensation causes increased stress and force on the vertebral body and creates an imbalance in the spine. He recommended that she undergo corrective surgery in order to prevent further curvature of her spine.

Similarly, Vanessa presented a videotaped deposition of a physician who had treated her. This physician testified that her activities will be permanently limited due to her injury. In addition, Vanessa's spine is now rigid, allowing her to bend back only 50 degrees, and she has already developed early degenerative arthritis in her lumbar spine. Further spinal changes or degeneration may cause projection into the spinal canal.

Vanessa also presented a videotaped deposition of an obstetrician and gynecologist, who testified that Vanessa would experience problems associated with pregnancy, labor and delivery.

Kevin's expert witness, Dr. Robert Hall, testified in his deposition that although Vanessa suffered spinal injuries resulting in increased curvature, her spine was relatively normal because it had naturally

compensated for the injury. Due to the compensation, the increased curvature in Vanessa's spine was not likely to cause her any pain and did not increase the risk of additional spinal problems.

At trial, Dr. Hall essentially repeated his deposition testimony. In addition, the following exchange took place during the direct examination of Dr. Hall:

"Q. Now, Doctor, are your [sic] familiar with the term axial pressure?
A. Axial loading?
Q. Axial loading?
A. Yes.
Q. What does that refer to?
A. Axial loading refers to essentially a compression force or something pushing together.
Q. How does that apply to the spine?
A. Well, axial loading is a—."

At this point in the exchange, Vanessa's attorney objected, claiming that any opinion on axial loading constituted a new opinion not disclosed in discovery. When the trial court asked what Dr. Hall would say in response to the axial loading questions, Kevin's attorney stated that he thought Dr. Hall would testify about the basis for his opinion that Vanessa's spine was well compensated. However, Kevin's attorney did not specifically state what Dr. Hall's testimony on this issue would be. Kevin's attorney also admitted that Dr. Hall had not testified about axial loading at his deposition despite the fact that he was asked to disclose all of his opinions. The trial court then sustained Vanessa's objection.

Kevin also presented the testimony of Dr. James Meserow, an obstetrician and gynecologist. According to Dr. Meserow, Vanessa would not experience any future problems with pregnancy, labor or delivery as a result of her injuries.

Before the jury was selected, the trial court advised the parties that in *Smith v. City of Evanston* (1994), 260 Ill. App. 3d 925, 631 N.E.2d 1269, the first district held that jury instructions should be modified by using loss of a normal life as an element of damages rather than the IPI approved disability instruction. (See Illinois Pattern Jury Instructions, Civil, No. 30.04 (3d ed. 1995).) At the conclusion of the trial, the court gave the loss-of-normal-life instruction over Kevin's objection. The court's instruction defined loss of normal life as "a person's diminished ability to enjoy life that the person has experienced which includes a person's temporary or permanent inability to pursue the pleasurable aspects of life, such as recreation or hobbies."

The jury returned an itemized verdict for Vanessa in the following amounts:

| | |
|---|---|
| Loss of normal life: | $335,000 |
| Disfigurement: | $100,000 |
| Pain and suffering: | $240,000 |
| Medical expenses (past and future): | $ 85,000 |
| TOTAL | $750,000. |

Kevin then filed a motion for a new trial, alleging that the court erred in precluding Dr. Hall's testimony on axial loading and in giving the jury the non-IPI instruction on loss of normal life. The trial court denied the motion and Kevin appeals.

The first issue raised by Kevin is whether the trial court erred in excluding Dr. Hall's axial loading testimony.

■ It is well recognized in Illinois that when evidence is excluded, the failure to make an adequate offer of proof in the trial court results in the waiver of the issue on appeal. (*People v. Andrews* (1992), 146 Ill. 2d 413, 588 N.E.2d 1126.) An offer of proof is adequate if the attorney spells out the witness' anticipated testimony with particularity. *Andrews*, 146 Ill. 2d at 421, 588 N.E.2d at 1131.

■ At trial, when Vanessa's attorney objected to Dr. Hall's axial loading testimony, Kevin's attorney told the court that he thought Dr. Hall's axial loading testimony would relate to the basis for the doctor's opinion that Vanessa's spine was well compensated. We hold that his explanation of Dr. Hall's proposed testimony is not specific enough to preserve the issue on appeal.

Relying on *People v. Allison* (1992), 236 Ill. App. 3d 175, 602 N.E.2d 1288, Kevin argues that an informal offer of proof, where counsel summarizes what the proposed evidence or testimony will show, may be sufficient to preserve an erroneous evidentiary ruling for review. However, the *Allison* court held that an informal offer of proof is sufficient only if it is specific in nature and not based merely on speculation or conjecture. (*Allison*, 236 Ill. App. 3d at 185, 602 N.E.2d at 1295.) Since Kevin's attorney had to speculate as to what Dr. Hall's testimony on this issue would be, the proper way to preserve the issue for review was to formally offer the testimony in a question-and-answer manner outside the presence of the jury. (See *Allison*, 236 Ill. App. 3d at 185, 602 N.E.2d at 1295.) His failure to make a formal offer of proof resulted in the waiver of this issue.

Second, Kevin argues that the trial court erred in substituting the loss-of-a-normal-life instruction for the IPI disability instruction.

■ A trial court's determination as to the instructions to be given to the jury will not be disturbed absent an abuse of discretion. (*Dab-*

*ros v. Wang* (1993), 243 Ill. App. 3d 259, 611 N.E.2d 1113.) A trial court abuses its discretion if jury instructions are not clear enough to avoid misleading the jury or if the jury instructions do not accurately state the applicable law. (*Dabros*, 243 Ill. App. 3d at 267-68, 611 N.E.2d at 1119.) According to Supreme Court Rule 239(a), IPI instructions should be used wherever they accurately state the law applicable in a case. (134 Ill. 2d R. 239(a).) An instruction that allows the plaintiff to recover duplicate or overlapping damages is erroneous. *Powers v. Illinois Central Gulf R.R. Co.* (1982), 91 Ill. 2d 375, 438 N.E.2d 152.

■ In the instant case, the trial court relied on *Smith v. City of Evanston* (1994), 260 Ill. App. 3d 925, 631 N.E.2d 1269, to substitute loss of normal life for the IPI disability instruction. In *Smith*, the plaintiff presented evidence that prior to being injured, she was very active and enjoyed biking, camping, hiking and playing tennis. As a result of her injuries, however, the plaintiff had to curtail her activities and could no longer play tennis or go camping. The jury returned an itemized verdict for the plaintiff but awarded her no damages for disability. The trial court found that the jury misunderstood the legal meaning of disability and granted the plaintiff a new trial on the issue of damages.

On review, the appellate court discussed the history of damage instructions and concluded that the IPI disability instruction is frequently misunderstood by juries and may lead to duplicative recovery. Citing an article by Michael Graham entitled *Pattern Jury Instructions: The Prospect of Over or Undercompensation in Damage Awards for Personal Injuries*, 28 DePaul L. Rev. 33 (1978), the appellate court held that the loss-of-a-normal-life instruction is less likely than the IPI disability instruction to be misunderstood by a jury or result in duplication of damages. (*Smith v. City of Evanston* (1994), 260 Ill. App. 3d 925, 936-38, 631 N.E.2d 1269, 1277-79.) The court defined "loss of a normal life" as "plaintiff's '[d]iminished ability to enjoy life that the plaintiff has experienced,' [citation] which should include plaintiff's temporary or permanent inability to pursue the pleasurable aspects of life, such as recreation or hobbies." 260 Ill. App. 3d at 938, 631 N.E.2d at 1279.

Like the plaintiff in *Smith*, Vanessa presented evidence that her injuries prevented her from participating in the many sporting activities she had previously enjoyed. Vanessa's expert testified that she could expect her future activities to be permanently limited. Another witness testified that Vanessa will experience difficulty associated with child bearing. Based on this evidence, it was reasonable for the trial court to instruct the jury to award damages to Vanessa based

on her "diminished ability to enjoy life that [she] has experienced which includes *** temporary or permanent inability to pursue the pleasurable aspects of life, such as recreation or hobbies." This instruction was more closely tailored to the evidence presented in this case than the IPI disability instruction. Accordingly, the trial court did not abuse its discretion by applying the *Smith* holding.

Kevin, however, argues that *Smith* was erroneously decided and he urges us not to follow it. Citing *Fetzer v. Wood* (1991), 211 Ill. App. 3d 70, 569 N.E.2d 1237, Kevin claims that loss of a normal life is a component of pain and suffering rather than disability. He thus maintains that the loss-of-a-normal-life instruction increased the likelihood that the jury awarded duplicate damages. We disagree.

The issue in *Fetzer* was whether the trial court erred in excluding expert testimony on the decedent's loss of enjoyment of life. The *Fetzer* court did not directly address the question of whether loss of a normal life is a component of pain and suffering. To the extent that *Fetzer* implies that loss of a normal life is a component of pain and suffering rather than disability, it is inconsistent with other Illinois cases. (*E.g., Knight v. Lord* (1995), 271 Ill. App. 3d 581, 590, 648 N.E.2d 617 (holding that "proposed jury instruction misstated the law by declaring the loss of enjoyment of life is a component of *pain and suffering,* rather than *disability*" (emphasis in original)).) Accordingly, *Fetzer* does not persuade us that the trial court abused its discretion by giving the loss-of-normal-life instruction.

Finally, Kevin argues that Vanessa's attorney improperly linked loss of a normal life with pain and suffering in his closing argument. He maintains that these remarks increased the likelihood that the jury awarded Vanessa duplicative damages for loss of normal life and pain and suffering.

During the closing arguments, Vanessa's attorney did discuss loss of a normal life and pain and suffering. However, we do not interpret these remarks as being misleading or as requesting the jury to award duplicative damages. Rather, they appear to be part and parcel of the discussion of the various damages Vanessa suffered. Furthermore, Kevin's attorney failed to object to any of the remarks that he claims misled the jury, and he thus waived this issue. (See *Miceikis v. Field* (1976), 37 Ill. App. 3d 763, 347 N.E.2d 320.) Accordingly, this argument is without merit.

For the foregoing reasons, the judgment of the circuit court of Will County is affirmed.

Affirmed.

LYTTON and McCUSKEY, JJ., concur.